#28524-rev in pt & aff in pt-MES
**2019 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ZHI GANG ZHANG,                                        Plaintiff and Appellant,

  v.

DAN RASMUS, AN INDIVIDUAL,
RASMUS LAW OFFICE, LLC;
TIM JAMES, AN INDIVIDUAL,
JAMES LAW, PC; WILLIAM R.
SKOLNICK, AN INDIVIDUAL,
AMY D. JOYCE, AN INDIVIDUAL,
SKOLNICK & SHIFF, P.A.,                                Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SCOTT P. MYREN
Judge

* * * *

DR. ZHI GANG ZHANG
Aberdeen, South Dakota                                 Pro Se plaintiff and appellant.


ROBERT D. TRZYNKA of
Cutler Law Firm, LLP
Sioux Falls, South Dakota                              Attorneys for defendants and
                                                       appellees Dan Rasmus and
                                                       Rasmus Law Office, LLC.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 12, 2018
OPINION FILED **07/24/19**

WILLIAM P. FULLER
MOLLY K. BECK of
Fuller & Williamson, LLP
Sioux Falls, South Dakota

Attorneys for Appellee Tim
James and James Law, PC.


DANIEL F. DUFFY
BENJAMIN D. TRONNES of
Bangs, McCullen, Butler,
 Foye & Simmons, LLP
Rapid City, South Dakota

Attorneys for Appellee William
R. Skolnick, Amy D. Joyce and
Skolnick & Shiff, P.A.

#28524

SALTER, Justice

[¶1.] Dr. Zhi Gang Zhang, proceeding pro se, commenced this legal malpractice action against his former attorneys who were, themselves, engaged to prosecute a legal malpractice claim against Zhang's former divorce attorney. The circuit court granted one attorney's motion to dismiss for lack of personal jurisdiction and granted summary judgment in favor of all the former attorneys. Zhang appeals, arguing the circuit court erred when it granted the motion to dismiss and the summary judgment motions. Zhang further claims the court abused its discretion when it denied his request to amend his complaint and required him to seek court approval to use an interpreter. We reverse the circuit court's order dismissing the complaint for lack of personal jurisdiction and affirm the court's determinations of the remaining issues.

**Background**

[¶2.] Zhang is a physician who practices in Aberdeen. In September 2009, he retained Jodi Brown to commence a divorce action against his then-spouse. The parties were able to resolve the issues related to their divorce by agreement, with the exception of spousal support. The circuit court judge presiding over the divorce action conducted a court trial, and after reviewing the well-established alimony factors, awarded Zhang's ex-wife permanent spousal support in the amount of $7,500 per month. Zhang did not appeal the court's order, but he viewed the result as adverse.

[¶3.] In 2012, Zhang contacted attorney Tim James to explore a legal malpractice claim against Brown. Since James did not practice family law, he

asked an experienced family law attorney for assistance with reviewing Zhang's divorce proceedings. Based upon the review, she advised James that she did not believe a malpractice action against Brown would be successful. James relayed the assessment to Zhang and advised that he would not pursue a legal malpractice claim against Brown. James also explained, however, that Zhang was free to obtain another opinion from a different attorney.

[¶4.]     Zhang was interested in a second opinion, and James referred him to Minneapolis attorney Dan Rasmus. Zhang retained Rasmus, who was admitted *pro hac vice* on July 9, 2013, with James serving as local counsel. Rasmus commenced a malpractice suit against Brown, and the case was eventually assigned to Retired Circuit Judge Gene Paul Kean.

[¶5.]     For reasons not relevant to this appeal, Rasmus and James sought Judge Kean's recusal from the case. They were not successful, however, and told Zhang it was in his interest to have a different law firm represent him. Zhang agreed and retained William R. Skolnick and Amy Joyce of the law firm Skolnick & Shiff, P.A. (Skolnick), also of Minneapolis. Zhang and Skolnick signed a retainer agreement that specifically acknowledged the pendency of the South Dakota malpractice action against Brown. In fact, Skolnick contacted the court and opposing counsel in South Dakota several times to advise of its representation and to reschedule a hearing. The court eventually allowed Rasmus and James to withdraw.

[¶6.]     Skolnick later reviewed the file in greater detail and told Zhang that the firm did not find any evidence that Brown had committed malpractice. Skolnick

advised Zhang to dismiss the lawsuit since Brown had moved for sanctions, and he could be found responsible for Brown's attorney fees if she prevailed. Skolnick advised the court in an email that it would not be representing Zhang, citing an inability to arrange for local counsel. Zhang voluntarily dismissed his malpractice lawsuit against Brown on October 31, 2013.

[¶7.] Acting pro se, Zhang then commenced the present action against James, Rasmus, and Skolnick (Appellees), alleging malpractice based upon their collective work on the Brown malpractice claim. Zhang specifically alleged breach of contract, negligence, "incompetent legal representation," and legal malpractice against the Appellees. In its answer, Skolnick affirmatively asserted that the circuit court lacked personal jurisdiction over it and that Zhang had failed to commence the lawsuit within the statute of limitations.

[¶8.] Zhang captioned his complaint as "Complaint and Jury & Interpreter Demand," but the contents of the complaint did not contain a demand for a jury trial or an interpreter.[1] Zhang moved to continue a May 2017 hearing until October 6, 2017, stating he had previously filed a request for an interpreter and had tried to work with the court and the opposing parties to get an interpreter. In his amended notice of hearing, Zhang noted that he had not yet resolved the interpreter issue.

[¶9.] On May 23, 2017, Zhang sent a letter to the circuit court requesting approval of Minnesota interpreter Dongfu Zhou, indicating the court administrator had not approved his request for an interpreter for the May 2017 hearing. The

---

1. Zhang speaks English as his second language. His first language is Mandarin Chinese.

court addressed Zhang's interpreter concerns at the May hearing and explained that it is a party's responsibility in a civil case to arrange for an interpreter and to seek the court's approval. The court instructed Zhang to file a motion to allow the court to assess the interpreter's qualifications.

[¶10.]	Zhang moved for an order approving Zhou to act as his interpreter, and the court granted the motion during the October 6, 2017 hearing. Zhou, however, was not present, and Zhang expressed disappointment that he was not able to utilize an interpreter immediately at that hearing. The court advised that a hearing was necessary to consider Zhang's motion, and the interpreter could be used during subsequent hearings. Zhou was, in fact, present at the next motions hearing.

[¶11.]	The circuit court's scheduling order required Zhang to disclose his experts by October 2, 2017. Zhang filed an affidavit on the deadline, in which he stated he had "enough written evidence to prove his case[.]" He further stated that the facts and "evidence to be presented at trial will show the acts and omissions so clearly that a layman could reasonably conclude that they were negligent without the aid of expert testimony."

[¶12.]	Zhang also moved to amend and supplement his complaint to add claims for "malice," breach of fiduciary duty, deceit and fraud, withholding trust funds, and "continued malice." The court denied Zhang's motion, stating the matter was "significantly along," and finding Zhang did not explain why he was unable to make these claims in the original complaint.

[¶13.] Skolnick moved to dismiss Zhang's malpractice claim, arguing the circuit court lacked personal jurisdiction. *See* SDCL 15-6-12(b). Alternatively, Skolnick moved for summary judgment, alleging Zhang's lawsuit was time-barred and also that there was insufficient evidence to support a legal malpractice claim against Brown. The court granted Skolnick's motion to dismiss, finding it lacked personal jurisdiction due to insufficient minimum contacts in South Dakota. The court did not initially address Skolnick's alternative motion for summary judgment.

[¶14.] Zhang moved to reconsider Skolnick's dismissal. In its brief in opposition, Skolnick asked the court to grant its prior summary judgment motion if the court now found it had personal jurisdiction. Skolnick also joined Rasmus' separate summary judgment motion based upon Zhang's failure to disclose an expert witness. The court denied Zhang's motion for reconsideration and alternatively granted Skolnick's motion for summary judgment based on statute of limitations and the absence of a legal duty. The court also granted summary judgment to Skolnick and Rasmus due to Zhang's failure to disclose an expert witness, concluding it was fatal to his malpractice claim.

[¶15.] James moved for summary judgment as well, claiming the transfer of representation to Skolnick removed any duty he owed to Zhang. The circuit court agreed and granted James summary judgment.

[¶16.] Zhang appeals several issues from the circuit court, which we restate as follows:

1. Whether the court erred when it granted Skolnick's motion to dismiss for lack of personal jurisdiction.

2.  Whether the circuit court erred when it granted summary judgment in favor of the Appellees.

3.  Whether the circuit court abused its discretion when it denied Zhang's motion to amend his complaint.

4.  Whether the circuit court abused its discretion by requiring Zhang to seek court approval of his interpreter.

## Analysis

### *Skolnick's Motion to Dismiss for Lack of Personal Jurisdiction*

[¶17.]     A motion to dismiss under SDCL 15-6-12(b)(2) "is a challenge to the court's jurisdiction over the person and is a question of law that we review de novo." *Kustom Cycles, Inc. v. Bowyer*, 2014 S.D. 87, ¶ 8, 857 N.W.2d 401, 405. Where, as here, a circuit court determines a motion to dismiss on the strength of the written submissions and without conducting an evidentiary hearing, we review that court's decision "in the light most favorable to the nonmoving party[]" and without according any deference to the court's factual findings. *Daktronics, Inc. v. LBW Tech. Co.*, 2007 S.D. 80, ¶ 3, 737 N.W.2d 413, 416 (quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003)).

[¶18.]     South Dakota courts must consider two questions to determine whether they possess "personal jurisdiction over a nonresident defendant." *Kustom Cycles*, 2014 S.D. 87, ¶ 9, 857 N.W.2d at 406. "The first inquiry is whether the legislature granted the court jurisdiction pursuant to South Dakota's Long Arm Statute . . . ." *Id.* (quoting *Daktronics,* 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416); *see also* SDCL 15-7-2 (South Dakota's long-arm statute). "Second, the assertion of jurisdiction must 'comport with federal due process requirements.'" *Id.* (quoting *Daktronics,* 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416).

[¶19.]    Our long-arm statute includes, among its subsections, the following bases for the assertion of personal jurisdiction:

> (1) The transaction of any business within the state;
>  . . .
> (5) Entering into a contract for services to be rendered . . . in this state by such person;
>  . . .
> (11) Commencing or participating in negotiations, mediation, arbitration, or litigation involving subject matter located in whole or in part within the state[.]

SDCL 15-7-2.

[¶20.]    Without question, Skolnick's representation of Zhang implicated some or all of these individual bases.  However, before determining whether Skolnick's conduct could support the assertion of personal jurisdiction, due process requires a showing that a non-resident defendant had minimum contacts with South Dakota so that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  *Id.* ¶ 10, 857 N.W.2d at 406 (quoting *Int'l Shoe Co. v. Wash., Office of Unemp't. Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).  Drawing from well-established principles developed by the United States Supreme Court, we have explained the limits of due process in the following terms:

> There must also be some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  This 'purposeful availment' requirement ensures that a defendant will not be haled into a court of the forum solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .  Moreover, the defendant's conduct and connection with the forum must be such that he could reasonably anticipate being haled into a forum court.

*Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 14, 743 N.W.2d 402, 406 (internal quotations and citations omitted).

[¶21.]     From these guiding principles, we have developed a three-part test to assist courts in determining whether a non-resident defendant's actions provide sufficient minimum contacts to support the constitutional assertion of personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from [the] defendant's activities directed at the forum state. Finally, the acts of [the] defendant must have substantial connection with the forum state to make the exercise of jurisdiction over [the] defendant a reasonable one.

*Marschke*, 2007 S.D. 125, ¶ 15, 743 N.W.2d at 407 (quoting *Daktronics*, 2007 S.D. 80 ¶ 6, 737 N.W.2d at 417) (interpreting the due process requirements discussed in *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985), and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)).

[¶22.]     Here, Skolnick entered into a retainer agreement with a South Dakota resident that contemplated its representation in a pending South Dakota civil action.  The agreement stated, among other things:

> You have hired the Firm to give you legal advice, counsel and assistance in connection with your malpractice claim against Jodi L. Brown and the Brown Law Firm, P.C. venued in Minnehaha County, South Dakota.  More specifically, you have hired the Firm to advise you of your legal claims and defenses, to devise and implement a strategy for negotiating a settlement of those claims and defenses and to represent you in the lawsuit concerning those claims and defenses.

[¶23.] Though not licensed to practice law in South Dakota, Skolnick attorneys intended to obtain *pro hac vice* admission and appear on Zhang's behalf in a South Dakota courtroom. In fact, Skolnick rendered legal advice to Zhang concerning Brown's motion for sanctions in the South Dakota action. Although perhaps not appearing as counsel of record at a court appearance, Skolnick effectively participated in the Brown malpractice litigation by advising Zhang and by contacting the South Dakota court by e-mail.

[¶24.] Under the circumstances, we believe Skolnick's "conduct and connection with [South Dakota were] such that [it] could reasonably anticipate being haled into a [South Dakota] court." *Marschke*, 2007 S.D. 125, ¶ 14, 743 N.W.2d at 406. Skolnick's actions during its representation of Zhang were purposeful, indisputably directed at South Dakota, and closely related to the reasons for which Zhang seeks personal jurisdiction.[2] Therefore, the circuit court erred when it determined it did not have personal jurisdiction over Skolnick. In order to prevail on appeal, however, Zhang must further demonstrate that the court also erred when it granted Skolnick's alternative motion for summary judgment as well as the summary judgment motions of the other Appellees.

---

2. We recognize that the existence of a contract between the plaintiff and a non-resident defendant does not automatically provide sufficient contacts for assertion of personal jurisdiction. *Marschke*, 2007 S.D. 125, ¶ 16, 743 N.W.2d at 407 ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests"[.] (quoting *Burger King,* 471 U.S. at 479, 105 S. Ct. at 2185)).

***Appellees' Motions for Summary Judgment***

[¶25.]        We review a court's decision to grant a motion for summary judgment de novo. *Harvieux v. Progressive N. Ins. Co.,* 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700. Our review requires us to determine

> whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Hamilton v. Sommers*, 2014 S.D. 76, ¶ 17, 855 N.W.2d 855, 861 (quoting *De Smet Farm Mut. Co. of S.D. v. Busskohl*, 2013 S.D. 52, ¶ 11, 834 N.W.2d 826, 831); *see also Cooper v. Brownell,* 2019 S.D. 10, ¶¶ 15-16, 923 N.W.2d 821, 825 (per curiam) (determining that the plaintiff could not "'rest upon the mere allegations' in his pleadings" and needed expert testimony to resist summary judgment).

[¶26.]        A unifying feature for all summary judgment theories advanced by the Appellees is the sustainability of Zhang's underlying malpractice claim against Brown. In order to advance his current malpractice claims against the Appellees, Zhang must establish a colorable claim of negligence against Brown. The undisputed material facts contained in the record establish, however, that he is unable to make this predicate showing.[3]

---

3.        The circuit court relied upon different bases to support its decisions to grant the Appellees' individual summary judgment motions. We believe it is

(continued . . .)

[¶27.]      In order to prevail in a legal malpractice claim, "a plaintiff must prove: (1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual damage." *Peterson v. Issenhuth*, 2014 S.D. 1, ¶ 17, 842 N.W.2d, 351, 355 (quoting *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 24, 652 N.W.2d 756, 767). In addition, "the plaintiff can recover against the defendant-attorney only when it can be shown that the injury would not have occurred 'but for' the negligence of the lawyer." *Hamilton*, 2014 S.D. 76, ¶ 39, 855 N.W.2d at 867 (quoting *Weiss v. Van Norman*, 1997 S.D. 40, ¶ 12, 562 N.W.2d 113, 116). Therefore, the plaintiff must essentially prove a "case within a case" by showing "that the underlying claim was valid [and] would have resulted in a favorable judgment had it not been for the attorney's error[.]" *Haberer v. Rice*, 511 N.W.2d 279, 285 (S.D. 1994).

[¶28.]      The standard of care that an attorney should exercise is the skill and knowledge ordinarily possessed by an attorney. *Hamilton*, 2014 S.D. 76, ¶ 23, 855 N.W.2d at 862. To determine the standard of care in a legal malpractice action, it is most often necessary to have an expert witness explain how the attorney's actions fell below the standard of care. As we explained in *Lenius v. King*:

---

(. . . continued)
> unnecessary to address each of these bases because Zhang's failure to obtain an expert witness is endemic and renders his malpractice claim infirm as to all the Appellees. *See Zochert v. Protective Life Ins. Co.*, 2018 S.D. 84, ¶ 41 n.5, 921 N.W.2d 479, 491 n.5 ("[W]e can affirm the court for any basis which supports the court's ultimate determination." (citing *BAC Home Loans Servicing, LP v. Trancynger*, 2014 S.D. 22, ¶ 8, 847 N.W.2d 137, 140)).

> In a malpractice action the jury decides, from evidence presented at trial by other lawyers called as expert witnesses, whether a lawyer possessed and used the knowledge, skill, and care which the law demands of him. The opinions and testimony of such experts are indispensable in determining questions which are unfamiliar to ordinary witnesses . . . .

294 N.W.2d 912, 914 (S.D. 1980).

[¶29.] There are, of course, certain legal malpractice actions where the question relating to an attorney's negligence is so clear that no expert is required, such as an allegation that the attorney failed to file an action within a clearly-established statute of limitation. *Id.* However, more complex legal malpractice cases require expert testimony to "establish the parameters of acceptable professional conduct . . . [because] a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and [cannot] . . . speculate about what the 'professional custom' may be." *Id.* (quoting *Hughes v. Malone*, 247 S.E.2d 107, 111 (Ga. Ct. App. 1978)).

[¶30.] Here, as in *Lenius*, Zhang's allegations do not correspond to incontrovertible professional standards, and the circuit court did not err when it concluded an expert would be necessary to assist the jury in determining the issues of negligence. This is particularly true since Zhang offers little more than an *ipso facto* argument focused upon a determined effort to relitigate the merits of his divorce case. This dissatisfaction, however, proves only the existence of an adverse result that Zhang did not appeal, and it would not assist a jury in determining the applicable professional standards in his legal malpractice claim.

[¶31.]     In this regard, Zhang has not pointed to any evidence in the record to support a claim of professional negligence against Brown. Outside of Zhang's own conclusory allegations, neither James, Skolnick, nor a consulting legal expert have found support for his claims that Brown committed malpractice.[4] *See U.S. Bank Nat'l Ass'n v. Scott*, 2003 S.D. 149, ¶ 39, 673 N.W.2d 646, 657 ("[S]ummary judgment is proper when the party opposing provides only conclusory statements and fails to present specific facts showing that a genuine issue exists for trial."). Simply put, there is no evidence to create a triable claim that Brown committed malpractice and, by extension, no evidence that Zhang received unsound advice about the validity of his malpractice claim against Brown from James, Rasmus, and Skolnick.

[¶32.]     The Brown malpractice claim is a necessary and subsidiary component of what may be fairly described as a case, within a case, within a case. There may well be disputed facts associated with Zhang's divorce in the sense that he disagrees with the testimony provided by certain expert witnesses, or statements of his ex-wife's attorney, or even the determination of the facts by the court. However, none of these disputes are material to his malpractice claims in the absence of any

---

4.     In his brief to this Court, Rasmus argues that Zhang's failure to identify an expert witness is fatal to his current malpractice claim because:

> Zhang had to prove that Appellees committed malpractice and Jodi Brown committed malpractice and Zhang would have had a different result at his divorce but for all of that malpractice. There is no way that a jury could have determined, without the aid of an expert, whether or not there was malpractice or whether there were damages proximately caused by that malpractice.

evidence that Brown acted negligently. Based upon our review of this record and drawing every permissible inference in Zhang's favor, we see only his dissatisfaction with the outcome of his divorce trial—not evidence of malpractice.

***Zhang's Motion to Amend his Complaint***

[¶33.] The circuit court's denial of a party's request to amend the pleadings is reviewed under an abuse of discretion standard. *McDowell v. Citicorp, Inc.*, 2008 S.D. 50, ¶ 7, 752 N.W.2d 209, 212. An abuse of discretion is "a fundamental error of judgment, a choice outside the reasonable range of permissible choices, a decision, which, on full consideration is arbitrary or unreasonable." *Wald, Inc. v. Stanley*, 2005 S.D. 112, ¶ 8, 706 N.W.2d 626, 629 (quoting *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910).

[¶34.] A party's ability to amend the pleadings is governed by SDCL 15-6-15(a), which provides in relevant part as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

[¶35.] Here, Zhang moved to amend his complaint to add the claims of "malice," breach of fiduciary duty, deceit and fraud, withholding trust funds, and "continued malice" in the current legal proceeding. The motion came over ten months after he commenced this action. The court denied Zhang's motion to amend, stating the case was "too far along" and Zhang could have brought these claims when he filed his complaint initially.

[¶36.]    Even without reviewing the court's exercise of discretion, we conclude that Zhang cannot prevail on this issue because he cannot demonstrate prejudice resulting from the denial of his motion to amend his complaint. Though he included several additional claims in his proposed amended complaint, Zhang challenges only the inability to add a fraud claim on appeal. His proposed fraud claim alleges Skolnick fraudulently withheld information about whether it was subject to South Dakota jurisdiction. Zhang made the claim after Skolnick's effort to avoid the court's jurisdiction, perhaps believing he could invoke the longer statute of limitations for fraud claims instead of the shorter time allowed for legal malpractice actions under SDCL 15-2-14.2. Regardless, given our determination that Skolnick was subject to the court's jurisdiction, we now know that Zhang could not have detrimentally relied on any allegedly fraudulent omissions by Skolnick.[5] *See Estate of Johnson ex rel. Johnson v. Weber*, 2017 S.D. 36, ¶ 32, 898 N.W.2d 718, 731 (plaintiff could not prevail in her fraud claim without demonstrating reliance upon a misrepresentation).

***Zhang's Interpreter Request***

[¶37.]    While we have acknowledged that *pro se* pleadings are held to "less stringent standards," self-represented litigants are otherwise held to the same standard as attorneys, including the obligations to comply with rules of procedure and evidence. *Peck v. S.D. Penitentiary Emps.*, 332 N.W.2d 714, 716 (S.D. 1983). Indeed, we have held that "[a]n unrepresented party 'can claim no advantage from

---

5.    Also, because the circuit court's decision to grant the Appellees' motions for summary judgment is supported by another independent basis, it is unnecessary to consider whether Zhang's action was time-barred.

his pro se status.'" *Webb v. Webb*, 2012 S.D. 41, ¶ 14, 814 N.W.2d 818, 823 (per curiam) (quoting *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 27, 776 N.W.2d 58, 65 (per curiam)). In this regard, our procedural and evidentiary rules, like the substantive requirements of the law, apply universally to all parties, regardless of whether they are represented.

[¶38.] Here, Zhang claims the circuit court improperly interfered with his ability to present his case against the Appellees by preventing him from immediately obtaining the assistance of an interpreter. We disagree.

[¶39.] Our review of the record fails to support the suggestion that the court treated Zhang exceptionally and, instead, establishes that the court thoroughly explained the rationale behind the process of obtaining an interpreter in a civil case. In this regard, we can discern no fault with the court's inclination to conduct a hearing to ensure that the interpreter was competent and independent. *See* SDCL 19-3-7 (interpreter for witnesses unable to communicate in English must be disinterested). The circuit court did require Zhang to seek approval of his proposed interpreter through a formal motion, but utilizing motion practice for this purpose is consistent with the rules of civil procedure and standard trial practice. Any delay in obtaining approval for the interpreter's assistance is attributable to Zhang, not the court.

[¶40.] Beyond this, we are unable to perceive any prejudice occasioned by the circuit court's method for approving Zhang's interpreter. In this regard, there is no indication that the interpreter's presence at any of the hearings would have changed the court's rulings. The court's general practice at these hearings was to

issue rulings from the bench based upon its review of the pre-hearing submissions with little or no oral argument.

## Conclusion

[¶41.]    Although the circuit court erred when it dismissed Skolnick based on lack of personal jurisdiction, it correctly granted summary judgment, on alternative grounds, to Skolnick and the other Appellees.  Zhang has not established a submissible case of legal malpractice for either the Brown divorce action or this case because he lacks critical expert testimony.  The circuit court's decision to deny Zhang's motion to amend his complaint to include a fraud claim cannot serve as a basis for reversal since it was based upon Skolnick's jurisdictional claim, which we have rejected.  In addition, the circuit court did not err by requiring Zhang to follow its procedure to obtain court approval of his proposed interpreter.  Zhang eventually prevailed in his effort to obtain an interpreter and is responsible for any delay which, in any event, did not prejudice him.  We reverse in part, and affirm in part.

[¶42.]    GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, concur.