#30252-a-SRJ
**2023 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DOUG BARR and DAWN BARR,                    Plaintiffs and Appellants,

    v.

JEFFREY A. COLE, WILLIAM D.
SIMS, and GREGORY T. BREWERS,                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Retired Judge

\* \* \* \*

LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota                    Attorneys for plaintiffs
                    and appellants.


JEFFREY G. HURD
EMILY M. SMORAGIEWICZ of
Bangs, McCullen, Butler, Foye
   & Simmons, LLP
Rapid City, South Dakota                    Attorneys for defendants
                    and appellees Jeffrey A. Cole
                    and William D. Sims.

\* \* \* \*

                    ARGUED
                    OCTOBER 4, 2023
                    OPINION FILED **11/29/23**

* * * *

JASON R. SUTTON of
Boyce Law Firm, LLP
Sioux Falls, South Dakota

Attorneys for defendant and
appellee Gregory T. Brewers.

JENSEN, Chief Justice

[¶1.] Doug and Dawn Barr (collectively the Barrs), husband and wife, sued Jeffrey Cole, William Sims, and Gregory Brewers (collectively the Attorneys) for legal malpractice, and related claims, arising out of the Attorneys' representation of the Barrs in a personal injury action transpiring from a motor vehicle accident involving Doug and Stuart Hughes. At the time of the accident, Hughes, who was employed by the State of South Dakota Unified Judicial System (UJS), was traveling to Sioux Falls after finishing work for the day in Parker. The Barrs' malpractice action alleged the Attorneys failed to timely notify the State of the Barrs' tort claims against it and settled with Hughes for less than the full value of their claims. The parties filed cross motions for summary judgment. The circuit court granted the Attorneys' motions, determining the Barrs could not recover for legal malpractice as the Barrs did not have a claim against the State because Hughes was not acting within the scope of his employment at the time of the accident. The court denied the Barrs' motion. The Barrs appeal. We affirm.

## Background

[¶2.] Doug and Hughes were involved in a motor vehicle accident on December 21, 2016, after Hughes ran a stop sign and collided with Doug's vehicle near Tea. Doug sustained serious and permanent injuries from the accident.

[¶3.] Hughes was working for the UJS in December 2016 as a law clerk for the First Judicial Circuit Court. Hughes lived in Vermillion, but his employment duty station was in Yankton. His work responsibilities required that he to travel to

other counties across the First Circuit[1] to assist judges with hearings, when requested. Hughes was reimbursed for his travel to other counties. On the day of the accident, Hughes was in Turner County assisting with a trial, and records show he was reimbursed for his roundtrip travel from his home in Vermillion to Parker. Hughes was driving his father's pickup because his own car was being serviced. After the trial concluded in Parker at the end of the day, Hughes began traveling to his parents' home in Sioux Falls, rather than returning to Vermillion, as his parents had planned a family holiday dinner.

[¶4.]     The accident occurred at approximately 5:30 p.m. Both individuals were transported to hospitals in Sioux Falls. Brewers, a close friend of the Barrs, learned of the accident and went to the hospital to see Doug. Shortly thereafter, the Barrs asked Brewers to provide legal representation to them regarding the car accident. Brewers agreed to represent the Barrs but informed them he would bring in another attorney with more experience in personal injury litigation. In January 2017, Cole and Sims began representing the Barrs alongside Brewers.

[¶5.]     The Attorneys filed a lawsuit, on behalf of the Barrs, against Hughes on September 6, 2017. The Attorneys did not give notice of the Barrs' claim to the State within 180 days of the accident pursuant to SDCL 3-21-2,[2] and the lawsuit

---

1.    The First Circuit encompasses fourteen counties in the southeastern part of South Dakota.

2.    SDCL 3-21-2 provides that "[n]o action for the recovery of damages for personal injury, property damage, error, or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place, and cause of the injury is given to the public entity as provided by this chapter within one hundred
                                                          (continued . . .)

did not allege a claim against the State. Based upon their investigation, the Attorneys knew Hughes worked for the State, but believed he was not acting within the scope of his employment because he was traveling towards Sioux Falls and the crash occurred in Lincoln County—not within the First Circuit. After additional discovery, the Attorneys discussed the possibility that Hughes may have been acting within the scope of his employment at the time of the accident because he had been paid roundtrip mileage for his trip to Parker and the State's workers' compensation carrier had paid at least some of his medical bills.

[¶6.] The Barrs believed their damages arising from the automobile accident exceeded $1,000,000. They initially demanded $1,000,000 from the carrier providing liability insurance coverage for Hughes's negligence. The Barrs eventually settled their claims against Hughes for $500,000, the limits of his insurance coverage.

[¶7.] Following the settlement of their personal injury claims, the Barrs brought this malpractice action against the Attorneys, alleging negligence, breach of fiduciary duty, breach of contract, and fraud, and for punitive damages. Underlying the Barrs' claims is the alleged failure of the Attorneys to pursue a claim for damages against the State for Hughes's negligence and the Attorneys' failure to inform the Barrs of this claim before they agreed to settle the claim for the policy limits indemnifying Hughes. The Barrs allege the claim against the State would have been covered by the Public Entity Pool for Liability (PEPL) fund and that an

_____

(. . . continued)
> eighty days after the injury. Nothing in this chapter tolls or extends any applicable limitation on the time for commencing an action."

additional $500,000 in coverage would have been available to compensate them for their injuries if the Attorneys had given timely notice of their claims to the State.

[¶8.]     The PEPL fund is a government-run, self-funded pool that "will pay damages . . . on behalf of [a state] *employee* that the *employee* becomes legally obligated to pay because of an *occurrence*[.]"  Occurrence, within the PEPL fund, is defined as "an accident, act, error, omission or event, during the Coverage Period, which results in damages and arises within the scope of the *employee's* duties for the *State*."  The PEPL's coverage limit is $1,000,000 per occurrence for any accident involving a state vehicle.  However, when a state employee is driving a personally owned vehicle, the PEPL fund, if applicable, becomes secondary to the vehicle's auto insurance.  Neither party disputes that the time to give notice to the State under SDCL 3-21-2 had elapsed on June 19, 2017.

[¶9.]     The Barrs filed a motion for summary judgment, arguing the Attorneys were negligent as a matter of law in failing to give notice of the Barrs' claim to the State within 180 days of the accident.  The Attorneys filed cross motions for summary judgment, arguing that Hughes was not acting within the scope of his employment at the time of the accident, and the PEPL fund would not have provided coverage for any of Doug's damages, even if timely notice had been given to the State.  Following a hearing, the circuit court entered an order granting the Attorneys' motions and denying the Barrs' motion.

[¶10.]     In explaining its ruling, the court stated, "Well, in reviewing this case, I think the cogent issue here is what was [Hughes's] purpose for returning to Sioux Falls.  I think that was a deviation from his course of employment . . . .  I think that

he abandoned his work purpose at that point and that he was on a personal trip to return to Sioux Falls . . . . But I think it's clear that he deviated from his employment and so I'm going to rule in favor of the [Attorneys] on the issue of whether the PEPL Fund would have provided coverage. I think that obviously moots out the other issues that we need to determine." The court entered a final judgment dismissing all the Barrs' claims against the Attorneys with prejudice.

[¶11.] The Barrs appeal and raise two issues, which we restate as the following:

1. Whether a plaintiff, when asserting a legal malpractice claim, must show the underlying claim would have been successful but for the alleged malpractice.

2. Whether the circuit court erred when it granted summary judgment in favor of the Attorneys, concluding Hughes had deviated from the scope of his employment.

**Analysis**

***1. Proof of causation for legal malpractice.***

[¶12.] "In order to prevail in a legal malpractice claim, 'a plaintiff must prove: (1) the existence of an attorney–client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual damage.'" *Zhi Gang Zhang v. Rasmus*, 2019 S.D. 46, ¶ 27, 932 N.W.2d 153, 162 (citation omitted). "[T]he plaintiff can recover against the defendant-attorney only when it can be shown that the injury would not have occurred 'but for' the negligence of the lawyer." *Id.* (citation omitted).

[¶13.] "Thus, the plaintiff in a legal malpractice case has not only to prove the four elements basic to negligence cases, but may be asked to prove three

additional factors: 1) that the underlying claim was valid, 2) that it would have resulted in a favorable judgment had it not been for the attorney's error, and 3) the amount of the judgment and that the judgment was collectible." *Haberer v. Rice*, 511 N.W.2d 279, 285 (S.D. 1994). This has come to be known as the case-within-a-case doctrine. *See, e.g.*, *Zhi Gang Zhang*, 2019 S.D. 46, ¶ 27, 932 N.W.2d at 162; *Haberer*, 511 N.W.2d at 285 ("Accordingly, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding.").

[¶14.]　　　The Barrs contend that this Court recently pared back the "case-within-a-case" doctrine, such that they need only prove the underlying claim was viable, not that the claim would be successful. *See Robinson-Podoll v. Harmelink, Fox and Ravnsborg Law Off.*, 2020 S.D. 5, 939 N.W.2d 32. While the Barrs acknowledge the decision in *Haberer* "appears to require 100% certainty of the underlying claim[,]" they "believe *Robinson-Podoll* clarified that language and provides a more logical standard[.]" The Attorneys respond that the Barrs must prove the underlying claim would have been successful but for the alleged malpractice. They argue that the Barrs are asking the Court to adopt the loss of chance doctrine, which has previously been expressly rejected by the Legislature.[3]

---

3. "The theory of loss of chance allows an aggrieved party to assert a claim against a tortfeasor whose conduct decreased or eliminated the chance of a favorable outcome." Alice Férot, *The Theory of Loss of Chance: Between Reticence and Acceptance*, 8 FIU L. Rev. 591, 591 (2013).

[¶15.] Contrary to the Barrs' assertion, *Robinson-Podoll* did not modify the case-within-a-case doctrine.[4] Further, the Barrs' arguments of lesser required proof for the underlying claim are inconsistent with our jurisprudence and public policy adopted by the Legislature. The Court initially adopted the loss of chance doctrine in a medical malpractice case in *Jorgenson v. Vener* (*Jorgenson I*), 2000 S.D. 87, ¶ 17, 616 N.W.2d 366, 371. We again considered the doctrine on Jorgenson's second appeal. *Jorgenson v. Vener* (*Jorgenson II*), 2002 S.D. 20, 640 N.W.2d 485. After this Court's decision in *Jorgenson II*, the South Dakota Legislature specifically abrogated the loss of chance doctrine and the holding in *Jorgenson I*. *See* SDCL 20-9-1.1 ("The Legislature finds that in those actions founded upon an alleged want of ordinary care or skill the conduct of the responsible party must be shown to have been the proximate cause of the injury complained of. The Legislature also finds that the application of the so called loss of chance doctrine in such cases improperly alters or eliminates the requirement of proximate causation. Therefore, the rule in *Jorgenson v. Vener*, 2000 S.D. 87, 616 N.W.2d 366 (2000) is hereby abrogated.").

[¶16.] As a result, "the plaintiff must essentially prove a 'case within a case' by showing 'that the underlying claim was valid [and] would have resulted in a favorable judgment had it not been for the attorney's error[.]'" *Zhi Gang Zhang*, 2019 S.D. 46, ¶ 27, 932 N.W.2d at 162 (alterations in original). The primary reason for a legal malpractice suit is to provide a remedy to clients who were harmed by

---

4. In particular, the Barrs overlook our discussion in *Robinson-Podoll* of the case-within-a-case requirement for legal malpractice claims. In discussing this standard, we reaffirmed the requirement that there must be "adequate proof on each claim." 2020 S.D. 5, ¶ 47, 939 N.W.2d at 48 (quoting *Zhi Gang Zhang*, 2019 S.D. 46, ¶ 32, 932 N.W.2d at 163).

their attorney's missteps. Requiring plaintiffs to prove that the underlying claim would have been successful is logical and proper. If the underlying claim would not have resulted in a favorable outcome for the clients, then there would have been no injury to remedy.

[¶17.] Having determined that the Barrs must prove that their underlying claim would have been successful "but for" the alleged legal malpractice, we turn to the issue of whether the circuit court's grant of summary judgment was proper.

### 2. Grant of summary judgment.

[¶18.] "We review a court's decision to grant a motion for summary judgment de novo." *Zhi Gang Zhang*, 2019 S.D. 46, ¶ 25, 932 N.W.2d at 161. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Tammen v. Tronvold*, 2021 S.D. 56, ¶ 17, 965 N.W.2d 161, 168 (quoting SDCL 15-6-56(c)). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party . . . . If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Id.* (omission in original) (citation omitted). Further, "[e]ntry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *State v. BP plc*, 2020 S.D. 47, ¶ 23, 948 N.W.2d 45, 53.

[¶19.] The circuit court granted summary judgment on the Barrs' claims against the Attorneys after determining that Hughes was not acting within the

scope of his employment when he was driving from Parker to Sioux Falls for a family dinner. "An act 'is within the scope of . . . employment where it is reasonably necessary or appropriate to accomplish the purpose of [the employee's] employment, and intended for that purpose, although in excess of the powers actually conferred" on him. *S.D. Pub. Entity Pool for Liab. v. Winger*, 1997 S.D. 77, ¶ 9, 566 N.W.2d 125, 128. "Employees perform within the scope of employment even when they act with only implied authority[,]" and "[s]uch authority exists if an act is implicitly directed by an employer, or is of the same general nature of what is empowered, or is incident to conduct authorized." *Id.* (citations omitted). "Considerations of time, place, and circumstance assist our evaluation." *Id.* (citation omitted). Generally, whether conduct is within the scope of an individual's employment is a factual determination and "often involves questions of foreseeability that may require resolution by the trier of fact." *Tammen*, 2021 S.D. 56, ¶ 20, 965 N.W.2d at 169.

[¶20.] But "[e]mployees do not act within the scope of their jobs when they substantially deviate from the course of employment." *Winger*, 1997 S.D. 77, ¶ 10, 566 N.W.2d at 128. "Substantial deviations occur when employees *abandon the work purpose* in furtherance of a personal motive or 'frolic.'" *Id.* (emphasis added). "With slight deviations, coverage resumes only when employees return to the course of employment." *Id.* ¶ 11, 566 N.W.2d at 129. In contrast, when an employee substantially deviates from the "business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose[.]" *Id.* We have

recognized the question of "[w]hether a deviation is so substantial to bar reentry into the course of business is a question of law." *Id.*

[¶21.] The circuit court concluded that Hughes substantially deviated from his employment for the State after leaving the courthouse in Parker to travel to Sioux Falls. The court ruled, "I think that [Hughes] abandoned his work purpose at that point and that he was on a personal trip to return to Sioux Falls." The Barrs argue that "[t]he only way this Court can find a substantial deviation is if this Court makes inferences from the facts that are in a light most favorable to the Appellee's version of events." We disagree.

[¶22.] Viewing the facts in a light most favorable to the Barrs, the evidence establishes that Hughes substantially deviated from his employment by traveling to a family dinner that evening at his parents' home. Upon leaving the Turner County Courthouse at the end of the court day, Hughes did not return to Vermillion but instead began traveling to Sioux Falls. Hughes's travel to Sioux Falls for a family dinner was a purpose that was unrelated to his work as a law clerk. Hughes was not directed by any employee within the UJS to travel to Sioux Falls, and his attendance at the family dinner did not benefit the UJS. There are no genuine issues of material fact related to this question and the court properly resolved the question of whether Hughes had substantially deviated from his work purpose as a matter of law.

[¶23.] Nonetheless, the Barrs argue that "[d]riving to and from remote courthouses is within the scope of the UJS employment duties" undertaken by law clerks. In support, the Barrs point to the fact that Hughes was reimbursed for his

roundtrip travel from his home to the courthouse in Parker. However, the undisputed facts show that Hughes was not traveling back to Vermillion at the time of the accident. Furthermore, Hughes did not request or receive reimbursement for his travel from Parker to Sioux Falls.

[¶24.] The Barrs further contend that Hughes's travel to Sioux Falls was within the scope of his employment because his medical bills from the accident were paid by the State's workers' compensation carrier. The Barrs highlight the fact that workers' compensation is available for injuries "arising out of and in the course of the employment." *Terveen v. S.D. Dep't of Transp.*, 2015 S.D. 10, ¶ 8, 861 N.W.2d 775, 778. While there may be similarities in analyzing the scope of employment between workers' compensation and the PEPL fund benefits, the two determinations are different and independent of one another. More importantly, the argument does not implicate disputed facts. At most, the Barrs' claim suggests divergent views relating to the legal question of scope of employment.[5]

[¶25.] Further, there is evidence in the record suggesting that there may have been some initial miscommunication between Hughes and the circuit court administrator, at the time of the first report of injury, about whether the accident occurred while he was returning to Vermillion, rather than while traveling to Sioux Falls. In any event, the record before us on summary judgment leaves no question that Hughes was traveling to Sioux Falls at the time the accident occurred, not to

---

5. The director of the Office of Risk Management, which administers the PEPL fund, testified that "there are two separate programs, two separate entities, and we [PEPL fund] don't communicate to the most part about what they're [workers' compensation] dealing with or what I'm dealing with."

Vermillion. "[I]ndependent, self-serving endeavors unrelated to [a] job constitute[ ] a substantial deviation." *Winger*, 1997 S.D. 77, ¶ 14, 566 N.W.2d at 130. When Hughes left Parker and began his trek to Sioux Falls for a family dinner, an act independent of his employment with the UJS, he abandoned his purpose as a law clerk and was acting for his own personal benefit. As such, Hughes substantially deviated from any work-related purpose and was not acting within the scope of his employment as a matter of law.

[¶26.]       The Barrs' claims against the Attorneys for legal malpractice for failing to provide timely notice to the State were premised on Hughes acting within the scope of his employment at the time of the accident. Because the accident did not arise within the scope of Hughes's duties for the State, the accident was not an occurrence triggering PEPL fund coverage. Consequently, the Barrs could not have asserted a claim against the State in their underlying negligence action, and the Attorneys were not negligent for failing to pursue one. Therefore, the circuit court properly granted summary judgment in favor of the Attorneys.

[¶27.]       Affirmed.

[¶28.]       KERN, SALTER, DEVANEY, and MYREN, Justices, concur.