2003 SD 138

**Ruth E. WILLIAMS, Individually and as Executrix for the Estate of James E. Williams, Plaintiff and Appellant,**

**v.**

**Ruben G. MAULIS, d/b/a Maulis Law Office, Defendant and Appellee.**

Nos. 22589, 22599.

Supreme Court of South Dakota.

Argued Aug. 26, 2003.

Decided Dec. 3, 2003.

Thomas M. Tobin of Tonner, Tobin & King, Aberdeen, SD, for plaintiff and appellant.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, SD, for defendant and appellee.

ERICKSON, Judge.

[¶ 1.] Ruth E. Williams, individually and as executrix for the Estate of James E. Williams, brought a legal malpractice action against attorney Ruben G. Maulis and his law office. Ruth, however, did not commence this action until August 16, 2000 when a complaint was served upon attorney Maulis. This was five years and seven months after the signing of a contract for deed on December 27, 1995, and three years and ten days after Ruth retained another attorney to assist her with her estate planning. Maulis moved for summary judgment on the grounds that the three-year statute of limitations period had expired. The trial court granted the motion.

[¶ 2.] For reasons set forth below, the trial court is affirmed in part and reversed in part.

## FACTS

[¶ 3.] James and Eldon Williams were brothers, married to sisters. They farmed together and had an oral partnership for years. Maulis represented both James and Eldon over the years. In April 1984 they entered into a written partnership buy-sell agreement which Maulis drafted. James died on February 14, 1995. Maulis was retained to settle the affairs of James' estate. During the settlement of the estate, Eldon became hesitant to activate the buy-sell agreement because of high interest rates. Instead, he entered into negotiations to purchase the property by contract for deed at a reduced rate of interest.

[¶ 4.] Maulis represented Ruth individually and as executrix of the estate for purposes of negotiating the contract for deed.[1] An agreement was reached and the parties executed a contract for deed on

December 27, 1995. The contract for deed was between Ruth E. Williams, both individually and in her capacity as executrix of the James E. Williams Estate and Eldon and Mary Williams.

[¶ 5.] Maulis continued to represent the estate. On August 6, 1997, Ruth signed an authorization releasing estate information to James D. Taylor, a Mitchell attorney for the purpose of assisting her with a new estate plan. That authorization was sent to Maulis on August 13, 1997. Maulis continued to represent the estate until its closing on January 8, 1998.

## ANALYSIS

[¶ 6.] This Court's standard of review regarding a trial court's grant or denial of summary judgment is well established:

> Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Dakota Pork Industries v. City of Huron,* 2002 SD 3, ¶ 5, 638 N.W.2d 884, 885.

## A. SUMMARY JUDGMENT— STATUTE OF LIMITATIONS

[¶ 7.] The point at which a period of limitations begins to run must be

---

1. The malpractice action alleges that Maulis was also representing Eldon Williams and this conflict of interest was to the detriment of Ruth and the estate.

decided from the facts of each case, and statute of limitations questions are normally left for a jury. *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, 575 N.W.2d 457. There are several exceptions to that rule. First, "a court may determine a question of fact by summary judgment if it appears to involve no genuine issue of material fact and the claim fails as a matter of law." *Daktronics, Inc. v. McAfee*, 1999 SD 113, ¶ 16, 599 N.W.2d 358, 362. Second, deciding what constitutes accrual of a cause of action entailing statutory construction, presents an issue of law. *Bosse v. Quam*, 537 N.W.2d 8 (S.D. 1995).

[¶ 8.] We must ascertain whether there is any genuine issue of material fact concerning the date the cause of action accrued. If not, and if the applicable limitations period has expired as a matter of law, then the defendant is entitled to summary judgment. *Keegan v. First Bank of Sioux Falls*, 519 N.W.2d 607 (S.D.1994).

[¶ 9.] The statute of limitations for legal malpractice actions in South Dakota is found in SDCL 15–2–14.2, which provides with certain exceptions, that a malpractice action can be commenced "only within three years after the alleged malpractice, error, mistake or omission shall have occurred."

[¶ 10.] "[T]he statute of limitations on a claim of attorney malpractice begins to run at the time of the alleged negligence and not from the time when the negligence is discovered or the consequential damages are imposed." *Keegan*, 519 N.W.2d at 612.

[¶ 11.] The continuous representation doctrine can also toll the statute of limitations for legal malpractice. *Greene*, 1998 SD 16 at ¶ 10, 575 N.W.2d at 460. The continuous representation doctrine in a legal malpractice action applies when there is a:

[C]lear indicia of *an ongoing, continuous, developing, and dependent relationship* between the client and the attorney[.] This relationship is one which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems. *Furthermore, the application of this doctrine should only be applied where the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship.*

*Keegan*, 519 N.W.2d at 613 (citations and internal quotations omitted)(emphasis added). The continuous representation itself must occur before the three-year statute of limitations has run, to effectively toll it. *Id.* Continuous representation is at the gist of the issues in this case.

[¶ 12.] The professional service from which Ruth claims malpractice arose was Maulis' participation in the negotiation, drafting and endorsement of a contract for deed dated and signed December 27, 1995. There is no evidence that Maulis continued to represent Ruth, individually, after the signing of the contract for deed. However, it is conceded that Maulis continued to represent the estate of James E. Williams until 1998, when the estate was closed. In this instance Maulis had two clients at the time of negotiation of the contract for deed—Ruth in her individual capacity and Ruth in her trust capacity as executrix of the estate. Maulis' representation must be analyzed separately as to each of these clients.

[¶ 13.] The trial court found in its memorandum opinion that Ruth had "not alleged any specific facts showing that he represented her in her individual capacity any time after December 27, 1995." The

trial court found that the attorney-client relationship continued with reference to the estate until sometime after August 13, 1997. However, the court went on to find that Ruth "has not alleged any specific facts to show that this representation related to the contract for deed, nor has she alleged any specific facts to show that her relationship with Maulis was continuous, developing or dependent."

[¶ 14.] Maulis argues that the representation ended at the very least on August 13, 1997. He argues that (1) any negligent handling of the sale of the real estate is not related to the handling of the legal affairs of the estate; and (2) that any continuous representation ended when Ruth consulted with a different attorney. Maulis' theory is that because the lawyer-client relationship is based upon a trust relationship between client and the lawyer, the consultation with another lawyer marks an end of that relationship.

[¶ 15.] **Was Maulis' continued representation of the estate a continuation of the same or related services as he performed for the estate in negotiating the contract for deed?**

[¶ 16.] Maulis concedes he continued to represent Ruth as executrix of the estate until it closed on January 8, 1998. In her deposition, Ruth testified that she hired Maulis because her husband had used him and had trust and confidence in him. He became not only her lawyer, but her financial advisor.

[¶ 17.] There is no single rule for what is or is not continuous representation for all cases. This is particularly true in the probate of an estate. It is impossible to state one rule for all cases, because of the differences in the background, complexity and nature of the estate. For example, what is needed to manage and close an estate consisting primarily of real estate is much different than one consisting primarily of investments. Each case requires different types of activity on the part of an attorney.

[¶ 18.] In the context of an estate probate, the role of the executrix's attorney handling the negotiation and execution of a contract for deed cannot be looked at as a single isolated event. The sale of the property in question obviously involved the estate. Management of an estate involves inventorying the assets, collecting the assets, managing the assets while in the executrix's possession, allowing and paying claims, and distributing the remainder of the estate and finally closing it out. In this context the estate had to deal with the disposition of the real estate, either through the closing of the original buy-sell agreement, or some other means. The contract for deed and the closing of the estate are clearly related services and are part of a single act of representation.

[¶ 19.] **After August 1997 was the attorney-client relationship towards the executrix of the estate an ongoing, continuous, developing, and dependent relationship?**

[¶ 20.] At some point prior to August 13, 1997, Ruth decided to have her personal estate planning reviewed by a different attorney. Maulis argues that this is a clear indication that the attorney-client relationship was no longer ongoing, continuing, developing and dependent. Maulis argues that a letter from attorney James Taylor, dated August 13, 1997, along with an authorization to release information dated August 6, 1997, ended his representation of the estate because it ended the trust relationship between client and lawyer. It did not.

[¶ 21.] A close reading of both documents indicates that Maulis was not fired, nor replaced. Rather, the pur-

pose of the letter and authorization was to inform Maulis that Taylor had been hired to help Ruth with a new estate plan. To assist in that process, the authorization allowed Taylor to examine and copy documents. Apparently, it was at that point Taylor discovered that the estate was not yet closed. Whether prompted by this letter, or perhaps other correspondence or discussions (it is not clear from the record) Maulis then closed the estate in January 1998. However, he was still representing Ruth in her capacity as executrix.

> An attorney who is employed to probate an estate is not employed by and does not represent the estate. Rather, the personal representative (administrator or executor) is the client and the attorney represents them as their counsel. The selection of an attorney by the decedent is not binding upon the personal representative because, if the attorney is derelict in his duties, the personal representative is liable and so he must have the power to select his or her own attorney.

*Christie v. Dold,* 524 N.W.2d 866, 870–871 (S.D.1994).

[¶ 22.] Maulis argues that while he was still attorney of record the estate matters were all but ended and the estate merely needed to be closed. The hiring of Taylor, he contends, indicates that the relationship was no longer one of trust and was no longer developing. The word developing is subject to many definitions. Webster's Third New International Dictionary, 618 (1971). Taken in the context of continuous representation it merely means a continuity of professional services, rather than a sporadic or merely episodic representation from time to time, or from occurrence to occurrence, without some other connection.

[¶ 23.] Maulis' argument is not persuasive. The problem is that while the trust aspect of the relationship may have been deteriorating, the relationship was ongoing, continuing and dependent, because he had not yet closed the estate. The relationship was naturally winding down and Ruth's trust in Maulis may have been eroding, but he was still her attorney for the purposes of closing out the estate. To decide otherwise creates a slippery-slope of convoluted reasoning almost impossible to define. Every malpractice trial would begin with a search for that point in the relationship where it went sour, whereupon we would then re-visit the statute of limitations.

[¶ 24.] Therefore, summary judgment is affirmed as to the dismissal of the complaint brought by Ruth in her individual capacity, but is reversed as to the dismissal of the complaint brought by Ruth in her capacity as executrix.

### B. SUMMARY JUDGMENT—INSUF- FICIENCY OF EVIDENCE OF DAMAGES

[¶ 25.] Maulis asks this Court to review whether there is anything in the record to support evidence of damages caused by any acts or omissions on his part. Proof of service of such notice of review is present in the Supreme Court clerk's file. SDCL 15–26A–22. Maulis, as appellee, has complied with all statutory prerequisites, and this issue is properly before the court. Yet, Ruth did not file a reply brief to respond to the notice of review issue. SDCL 15–26A–62.

[¶ 26.] It is troublesome to the Court that no reply was filed given Maulis' properly filed notice of review. We are denied a proper developed briefing and appellate argument. By failing to treat Maulis' notice of review issue, Ruth "has acted contrary to statute [SDCL 15–26A–62] and we could therefore deem that [s]he conceded the issue." *Drier v. Great American Ins. Co.,* 409 N.W.2d 357, 361 (S.D.1987). In

*Drier,* 409 N.W.2d at 361–362, the Court concluded that "absent statute, defendants are not entitled to a reversal as a matter of right, and in exercise of our discretion," the court may review the matter and resolve any doubt, as to what the disposition should be.

[¶ 27.] While no specific values were given, Ruth, in an affidavit in response to summary judgment, outlined her damages. She wrote that if she had been properly represented, she could have stayed in the partnership and would not have had to sell her income producing assets; she could have negotiated a contract more favorable to herself, both as to price, payment provisions and interest rate; or if negotiations failed, she could have terminated the partnership and sold the land on the open market, at a time when land prices in the area were increasing rapidly, instead of at the appraisal price as of the time of her husband's death.

[¶ 28.] While we elect not to deem the issue conceded, we need not address this issue at this time since the trial court did not address the issue because it granted summary judgment on other grounds. This Court has often said that "an issue not raised at the trial court level cannot be raised the first time on appeal."

*Action Mechanical v. Deadwood Historic,* 2002 SD 121, ¶ 50, 652 N.W.2d 742, 755. And, more recently, this Court stated that it "will ordinarily decline to review issues not properly presented to the trial court."

*Estate of Gaspar v. Vogt, Brown & Merry,* 2003 SD 126, ¶ 15, 670 N.W.2d 918. In the present case, the issue was raised and properly presented below, but the trial court's decision did not address this issue. Since we have partially reversed summary judgment on the issue of the statute of limitations, we need not decide this issue now. This issue is better left to the trial court, subject to appellate review once a trial court has made a decision. This issue is remanded to the trial court for further review.

## CONCLUSION

[¶ 29.] Summary judgment is affirmed as to the dismissal of the complaint brought by Ruth in her individual capacity, but is reversed as to the dismissal of the complaint brought by Ruth in her capacity as executrix. Maulis' notice of review is remanded to the trial court for further review.

[¶ 30.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 31.] ERICKSON, Circuit Judge, for SABERS, Justice, disqualified.