#28429-aff in pt & rev in pt-SRJ
**2020 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JILL ROBINSON-PODOLL f/k/a
JILL ROBINSON-KUCHTA,                            Plaintiff and Appellant,

v.

HARMELINK, FOX & RAVNSBORG                        Defendants, Third-Party
LAW OFFICE and WANDA L. HOWEY-FOX,               Plaintiffs and Appellees.

v.

YANKTON COUNTY,                                   Third-Party Defendant and
SOUTH DAKOTA                                      Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

CASEY W. FIDELER of
Christopherson, Anderson,
    Paulson & Fideler, LLP
Sioux Falls, South Dakota

ROBERT J. ROHL of
Johnson Eiesland Law Offices, P.C.
Rapid City, South Dakota                          Attorneys for plaintiff
                                                  and appellant.

* * * *

ARGUED
FEBRUARY 19, 2019
OPINION FILED **01/29/20**

WILLIAM P. FULLER
MOLLY K. BECK of
Fuller & Williamson, LLP
Sioux Falls, South Dakota

Attorneys for defendants, third-party plaintiffs and appellees.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert
   & Garry, LLP
Sioux Falls, South Dakota

Attorneys for third-party defendant and appellee.

#28429

JENSEN, Justice

[¶1.] Jill Robinson-Podoll brought this legal malpractice action against Attorney Wanda L. Howey-Fox and Harmelink, Fox & Ravnsborg Law Office (Law Firm) arising from Howey-Fox's representation of Robinson-Podoll on a claim for personal injuries from an automobile accident. The circuit court granted summary judgment in favor of Howey-Fox, determining the legal malpractice action was time barred by SDCL 15-2-14.2. Robinson-Podoll appeals, arguing the circuit court erred in dismissing the action. She also argues the circuit court abused its discretion by allowing Howey-Fox to amend her answer to add SDCL 15-2-14.2 as an affirmative defense. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[¶2.] Robinson-Podoll was involved in a three-vehicle automobile accident with Michelle Mitchell and Chelsey Ewalt on April 28, 2007. Robinson-Podoll retained Howey-Fox and the Law Firm in February 2009 to represent her on a claim for personal injuries arising from the accident.

[¶3.] Howey-Fox prepared a summons and complaint naming Mitchell and Ewalt as defendants. On April 23, 2010, Howey-Fox attempted to commence the action by forwarding the summons and complaint to the Yankton County Sheriff (Sheriff) for service upon Mitchell and Ewalt. This was just six days before the statute of limitations was to expire on Robinson-Podoll's claim. The Sheriff served Mitchell on April 24, 2010 but was unable to locate Ewalt for service in Yankton County. The Sheriff subsequently delivered the summons and complaint to the

-1-

Codington County Sheriff for service on Ewalt after the limitations period had expired. Ewalt was served in Codington County on May 25, 2010.

[¶4.] On May 12, 2010, an attorney representing Safeco Insurance on a subrogation claim related to the accident sent Howey-Fox an email stating, "[The Yankton County deputy] returned my papers unserved today, stating that the defendant now lives in [Codington County]. The statute expired on April 28. Do we have a problem?[] What's the status of your case?" The attorney sent Howey-Fox another email on August 9, 2010, which stated:

> I just got done speaking to [Ewalt's attorney]. He seems pretty confident that both your case for personal injury and my case for subrogation were served beyond the statute of limitations. We appear to be on the same side on this one. Where do things stand on your case?

Howey-Fox responded, "I think he is wrong. [Papers were] filed and placed in the hands of the [Sheriff] before the [statute of limitations] ran. Further, it was served well within the extension created by [SDCL 15-2-31]."[1]

[¶5.] Ewalt moved for summary judgment on Robinson-Podoll's personal injury action alleging the claim against Ewalt was time barred by the applicable statute of limitations. The circuit court agreed and dismissed Ewalt on February 17, 2011. This Court granted discretionary review of Ewalt's dismissal and issued

---

1. SDCL 15-2-31 provides,

> An attempt to commence an action is deemed equivalent to the commencement thereof when the summons is delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendants or one of them, usually or last resided; . . . Such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days.

an opinion on January 4, 2012, determining that Ewalt was not served within three-year limitation period. *See Robinson v. Ewalt*, 2012 S.D. 1, 808 N.W.2d 123. However, the Court reversed the dismissal concluding the applicability of the sixty-day extension in SDCL 15-2-31 was dependent on resolving questions of fact as to whether Ewalt resided in Yankton County at the time of service. *Robinson*, 2012 S.D. 1, ¶ 15, 808 N.W.2d at 127.

[¶6.]     A jury trial was held on February 11, 2013, solely on the question of Ewalt's place of residence at the time of service. The jury returned a verdict finding that Ewalt resided in Codington County at the time of service. Based upon this finding, Ewalt again moved for summary judgment on the statute of limitations, arguing that the summons and complaint had not been delivered to the Codington County Sheriff before the limitations period expired. The circuit court granted Ewalt's motion, entering a judgment of dismissal on April 5, 2013. Robinson-Podoll's personal injury action against Mitchell remained pending. Howey-Fox continued as counsel of record until early 2015, when Howey-Fox moved to withdraw from representing Robinson-Podoll. The court entered an order granting the motion to withdraw on February 12, 2015. Robinson-Podoll's and Mitchell's counsel stipulated to a dismissal of Mitchell, with prejudice, on April 14, 2015.

[¶7.]     Robinson-Podoll commenced this legal malpractice action against Howey-Fox and the Law Firm on January 15, 2016. The complaint alleged that Howey-Fox continually represented Robinson-Podoll on the personal injury action until 2015 and breached multiple professional duties owed to Robinson-Podoll. Howey-Fox and the Law Firm answered and filed a third-party complaint against

Yankton County for indemnity and contribution, alleging the Sheriff was negligent in handling the service of the personal injury action on Ewalt.

[¶8.]     On June 30, 2017, Howey-Fox moved for leave to amend her answer. The proposed amendment sought to add an additional affirmative defense, alleging that Robinson-Podoll's legal malpractice claim was barred by the three-year statute of repose in SDCL 15-2-14.2. Howey-Fox's motion to amend relied upon this Court's decision in *Pitt-Hart v. Sanford USD Medical Center*, 2016 S.D. 33, 878 N.W.2d 406, and noted the decision was handed down after Howey-Fox filed her answer. On the same date, Robinson-Podoll also moved to amend her complaint to allege an additional claim against Howey-Fox. Robinson-Podoll alleged that Howey-Fox loaned $3,800 to Robinson-Podoll, during the attorney-client relationship, and took Robinson-Podoll's anniversary ring as collateral. Robinson-Podoll claimed the value of the ring exceeded the amount of the loan and the ring was never returned. The circuit court granted both motions to amend.

[¶9.]     On August 28, 2017, Howey-Fox moved for summary judgment relying on the statute of repose defense. Yankton County joined in the motion. The circuit court granted both motions concluding that SDCL 15-2-14.2 was a three-year statute of repose that barred Robinson-Podoll's claims against Howey-Fox. A judgment was entered dismissing Howey-Fox and Yankton County.

[¶10.]     Robinson-Podoll appeals raising several issues. We consolidate and address her issues as follows:

> 1.     Whether the circuit court abused its discretion by permitting Howey-Fox to amend her answer to allege SDCL 15-2-14.2 as an affirmative defense.

2.      Whether the circuit court erred in determining that Robinson-Podoll's claims were untimely under SDCL 15-2-14.2.

**Standard of Review**

[¶11.]     Motions to amend pleadings are reviewed for clear abuse of discretion. *McDowell v. Citicorp Inc.*, 2008 S.D. 50, ¶ 7, 752 N.W.2d 209, 212. "An abuse of discretion occurs when discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.*

[¶12.]     "Questions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 10, 907 N.W.2d 795, 798. "We discern legislative intent primarily using the language of the statute, giving the Legislature's words plain meaning and effect within the context they are used." *Coester v. Waubay Township*, 2018 S.D. 24, ¶ 7, 909 N.W.2d 709, 711. If the language of the statute is clear, certain, and unambiguous, the meaning is plainly expressed and we apply the words as written. *Perdue, Inc. v. Rounds*, 2010 S.D. 38, ¶ 9 n.2, 782 N.W.2d 375, 378 n.2.

[¶13.]     A circuit court's entry of summary judgment is reviewed de novo. *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 9, 908 N.W.2d 170, 174.

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Garrido v. Team Auto Sales, Inc.*, 2018 S.D. 41, ¶ 15, 913 N.W.2d 95, 100 (quotations omitted).

## Analysis and Decision

### 1. Whether the circuit court abused its discretion by permitting Howey-Fox to amend her answer to include SDCL 15-2-14.2 as an affirmative defense.

[¶14.] Generally "a party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." SDCL 15-6-15(a). "[T]he most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmoving party will be prejudiced by the amendment." *Hein v. Zoss*, 2016 S.D. 73, ¶ 24, 887 N.W.2d 62, 69-70 (quoting *Burhenn v. Dennis Supply Co.*, 2004 S.D. 91, ¶ 20, 685 N.W.2d 778, 783). "Prejudice is often shown when a party is surprised and unprepared to meet the contents of the proposed amendment." *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D. 1987).

[¶15.] Robinson-Podoll claims that Howey-Fox filed her motion to amend more than a year after *Pitt-Hart* was decided, and she was prejudiced by the amendment. Howey-Fox responds that *Pitt-Hart* was not decided until after she filed her answer in this case, and Robinson-Podoll has failed to show any prejudice.

[¶16.] At the hearing on the motion to amend, Robinson-Podoll focused on the inapplicability of *Pitt-Hart* to SDCL 15-2-14.2, rather than prejudice. The circuit court had not established pretrial deadlines or set a trial date at the time of the motion. Further, Robinson-Podoll never claimed that she needed additional time to conduct discovery or that she otherwise was unable to adequately defend the motion

for summary judgment following the motion to amend. Robinson-Podoll also filed a motion to amend her complaint adding a new claim of malpractice against Howey-Fox which was granted at the same time.

[¶17.] Robinson-Podoll has failed to identify any unfair prejudice occasioned by the circuit court's decision to allow Howey-Fox's amended answer, and we conclude the circuit court did not abuse its discretion in allowing the amendment.

> 2. *Whether the circuit court erred in determining that Robinson-Podoll's claims were untimely under SDCL 15-2-14.2.*

[¶18.] Robinson-Podoll claims that the circuit court erred in determining that SDCL 15-2-14.2 is a statute of repose that bars any claim for legal malpractice after three years, without exception. She cites a number of decisions from this Court in which we have referred to SDCL 15-2-14.2 as an occurrence-based "statute of limitations" and applied tolling exceptions to the three-year limitation period. *See, e.g.*, *Williams v. Maulis*, 2003 S.D. 138, ¶¶ 9-11, 672 N.W.2d 702, 705 (recognizing SDCL 15-2-14.2 as an occurrence statute of limitations and applying the continuing representation doctrine); *Cooper v. James*, 2001 S.D. 59, ¶ 8, 627 N.W.2d 784, 787-88 (determining that fact questions existed on the running of SDCL 15-2-14.2 because disputed facts remained as to when the continuous representation of the client by the attorney had terminated); *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 S.D. 16, ¶¶ 7, 9, 575 N.W.2d 457, 459-69 (explaining SDCL 15-2-14.2 is an occurrence-based statute of limitation and explaining how continuous representation tolls the statute's three-year limitation period); *Schoenrock v. Tappe*, 419 N.W.2d 197, 199-200 (S.D. 1988) (applying the continuing representation rule to toll the legal malpractice statute of limitations period in SDCL 15-2-14.2).

Robinson-Podoll contends that the circuit court erred by failing to apply the continuing representation and continuing tort doctrines to toll or delay the three-year limitation period in SDCL 15-2-14.2.

[¶19.] Howey-Fox responds that *Pitt-Hart's* conclusion that SDCL 15-2-14.1 is a statute of repose for medical malpractice actions is equally applicable to the legal malpractice statute in SDCL 15-2-14.2. She argues that the language of the two statutes are indistinguishable in terms of barring a claim for malpractice from the date of the occurrence.[2] Additionally, Howey-Fox maintains that our prior cases interpreting SDCL 15-2-14.2 as an occurrence-based rule, confirm that it is a

---

2. SDCL 15-2-14.1 provides,

> An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts *for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred,* provided, a counterclaim may be pleaded as a defense to any action for services brought by a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts after the limitation herein prescribed, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred and was not barred at the time the claim was sued or originated, but no judgment thereon except for costs can be rendered in favor of the party so pleading it.

(Emphasis added). Compare that language to SDCL 15-2-14.2, which provides,

> An action against a licensed attorney, his agent or employee, *for malpractice, error, mistake, or omission, whether based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake, or omission shall have occurred.* This section shall be prospective in application.

(Emphasis added).

statute of repose, regardless of the terminology this Court has used to describe it. Howey-Fox also argues that the tolling doctrines applied by our prior decisions are inconsistent with the language of SDCL 15-2-14.2 and *Pitt-Hart*. Howey-Fox claims that she committed one alleged act of malpractice in April 2010 as to the personal injury action, and one alleged act of malpractice in July 2012 as to the ring. She argues both claims are barred by SDCL 15-2-14.2 because the legal malpractice action was commenced more than three years after each occurrence.

### a. Whether SDCL 15-2-14.2 is a Statute of Repose.

[¶20.]        In *Pitt-Hart,* the plaintiff filed an action alleging hospital staff were negligent by allowing him to fall and injure his surgically repaired knee shortly after the surgery. 2016 S.D.33, ¶ 2, 878 N.W.2d at 409. The plaintiff commenced a lawsuit more than two years after his fall, but claimed his continuing medical treatment after surgery tolled the two-year malpractice limitation period in SDCL 15-2-14.1. *Id.* ¶¶ 4, 23, 878 N.W.2d at 409, 414. *Pitt-Hart* determined the malpractice action was untimely, explaining that SDCL 15-2-14.1 is a statute of repose that cannot "be tolled for any reason." ¶ 20, 878 N.W.2d at 413.[3] *Pitt-Hart* specifically rejected the tolling doctrines this Court had recognized under SDCL 15-2-14.1, stating "[t]he arguments against applying equitable tolling, estoppel, and fraudulent concealment to a period of repose apply with equal force to the tolling

---

3.     *Pitt-Hart* took time to "reexamine and clarify the operation of SDCL 15-2-14.1" because of inconsistencies in prior opinions labeling SDCL 15-2-14.1 as both a statute of repose and a statute of limitations. 2016 S.D. 33, ¶ 17, 878 N.W.2d at 413. However, *Pitt-Hart* noted SDCL 15-2-14.1 has always been viewed by our cases as a statute of repose by "consistently [holding that the statute] is an occurrence rule, which begins to run when the alleged negligent act occurs." *Id.* ¶ 19, 878 N.W.2d at 413.

that would result from application of the continuous-treatment rule." 2016 S.D. 33, ¶ 24, 878 N.W.2d at 415.

[¶21.] Holding that the express language of SDCL 15-2-14.1 created a repose period, the Court delineated the difference between a statute of limitations and a repose statute:

> A statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued. A statute of repose, on the other hand . . . is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. The two-year period expressed in SDCL 15-2-14.1 does not begin when a cause of action accrues; it begins when the alleged malpractice, error, mistake, or failure to cure shall have occurred[.] Therefore, as we held in [*Peterson ex rel. Peterson v. Burns*, 2001 S.D. 126, 635 N.W.2d 556]*, the two-year period expressed in SDCL 15-2-14.1 is a period of repose.

*Pitt-Hart*, 2016 S.D. 33, ¶ 18, 878 N.W.2d at 413 (quotations omitted).

[¶22.] Turning to the legal malpractice statute in SDCL 15-2-14.2, the language establishing a three-year period from the date of occurrence to commence an action is indistinguishable from the language of SDCL 15-2-14.1. Accordingly, *Pitt-Hart's* conclusion that SDCL 15-2-14.1 is a statute of repose applies no less authoritatively to SDCL 15-2-14.2. This Court has consistently recognized that SDCL 15-2-14.2 is an occurrence-based statute. *Williams*, 2003 S.D. 138, ¶ 10, 672 N.W.2d 702, 705; *Green v. Siegel, Barnett & Schutz*, 1996 S.D. 146, ¶ 30, 557 N.W.2d 396, 404; *Haberer v. Rice*, 511 N.W.2d 279, 287 (S.D. 1994); *Keegan v. First Bank of Sioux Falls*, 519 N.W.2d 607, 612 (S.D. 1994). These decisions have rejected an accrual or discovery-based rule, stating, "[i]f a discovery or damages rule is the appropriate basis to trigger the running of the statute, such arguments should be presented to the Legislature for its consideration as to what is the

-10-

appropriate public policy for this State." *Green*, 1996 S.D. 146, ¶ 9, 557 N.W.2d at 398-99. Thus, we clarify that the legal malpractice statute in SDCL 15-2-14.2 is a statute of repose, not a limitation period.

**b.     Whether the three-year legal malpractice repose period under SDCL 15-2-14.2 can be tolled.**

[¶23.]      Our prior decisions have applied two well-established tolling doctrines to SDCL 15-2-14.2: fraudulent concealment and continuous representation. In *Greene v. Morgan, Theeler, Cogley and Peterson,* we explained that under SDCL 15-2-14.2 "[w]e have [] consistently held that the continuous representation doctrine, adopted from the continuous treatment doctrine in medical malpractice cases, can likewise serve to toll the statute of limitations for legal malpractice." 1998 S.D. 16, ¶ 9, 575 N.W.2d457, 459. To apply the continuing representation doctrine, these decisions have required a showing of (1) an ongoing, continuous, and dependent attorney-client relationship; (2) that the relationship "involves a continuity of the professional services from which the alleged malpractice stems"; and (3) must involve "the same or related services" and not a mere "continuity of a general professional relationship." *Id.* ¶ 13, 575 N.W.2d at 460. We have stated the doctrine arises from the "relationship of trust or confidence between an attorney and client" and serves "a dual purpose in that it protects the attorney-client relationship by affording the attorney an opportunity to remedy an error, while also preventing the attorney from defeating a client's cause of action by delay." *Id.* ¶¶ 18, 26, 575 N.W.2d at 461, 462.

[¶24.]      The fraudulent concealment doctrine also arises from an ongoing attorney-client relationship. We stated in *Greene* that "[u]nder our 'occurrence rule'

for legal malpractice actions, [SDCL 15-2-14.2] 'will be tolled until the cause of action is discovered or might have been discovered, if there is fraudulent concealment of the cause of action.'" 1998 S.D. 16, ¶ 9, 575 N.W.2d 457, 459 (quoting *Glad v. Gunderson, Farrar, Aldrich & DeMersseman*, 378 N.W.2d 680, 682 (S.D. 1985)). It is from the attorney-client relationship of trust and confidence that the Court imposed an affirmative duty on an attorney to disclose "defects which the party with the duty to disclose *knew or should have known*." *Greene*, 1998 S.D. 16, ¶ 26, 575 N.W.2d at 462 (quoting *Glad*, 378 N.W.2d at 682-83).

[¶25.] Our decisions applying these doctrines to "toll" SDCL 15-2-14.2 cannot be reconciled with *Pitt-Hart*, or more importantly, the plain language of the statute. SDCL 15-2-14.2 requires that any claim of legal malpractice "be commenced only within three years after the alleged malpractice, error, mistake, or omission shall have occurred." There is no language in SDCL 15-2-14.2 which permits this Court to "toll" the repose period beyond three years after the last act or omission occurred. "[T]he 'critical distinction is that a repose period is fixed and its expiration *will not be delayed by estoppel or tolling*[.]'" *Pitt-Hart*, 2016 S.D. 33, ¶ 20, 878 N.W.2d at 413 (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9, 134 S. Ct. at 2183). Therefore, we modify our prior decisions, and hold that the continuing representation and fraudulent nondisclosure doctrines do not toll SDCL 15-2-14.2.

**c.      Whether the three-year legal malpractice repose period under SDCL 15-2-14.2 was delayed by the continuing tort doctrine.**

[¶26.] We next consider Robinson-Podoll's argument that ongoing tortious conduct by Howey-Fox while representing Robinson-Podoll delayed the occurrence of the malpractice under SDCL 15-2-14.2. She argues that Howey-Fox committed a

continuous and unbroken course of tortious conduct by failing to disclose to Robinson-Podoll that the personal injury action was not timely commenced and continuing to fail to disclose this error during the ongoing attorney-client relationship. In Robinson-Podoll's view, Howey-Fox's tortious conduct continued until the attorney-client relationship ended in early 2015.

[¶27.] In response, Howey-Fox claims that Robinson-Podoll failed to allege a breach of fiduciary duty claim in her complaint. She also contends Robinson-Podoll waived the issue whether the continuing tort doctrine applies by failing to make that argument before the circuit court. Howey-Fox further argues that a duty to disclose did not arise under the facts of this case, and the facts do not support application of the continuing tort doctrine.

[¶28.] The amended complaint alleges that Howey-Fox owed a "duty to use the care and skill ordinarily exercised by an attorney in similar circumstances." The amended complaint also alleges that Howey-Fox breached a number of professional duties by "fail[ing] to meet the standard of care[,]" including failing to "properly preserve all of [Robinson-Podoll's] claims" and "failing to keep [Robinson-Podoll] apprised of the status of her claim". These claims allege professional negligence against Howey-Fox in failing to exercise the knowledge, skill, and care expected of a reasonable attorney. *See Zhi Gang Zhang v. Rasmus*, 2019 S.D. 46, ¶ 28, 932 N.W.2d 153, 162; *Hamilton v. Sommers*, 2014 S.D. 76, ¶¶ 21-22, 855 N.W.2d 855, 862. The amended complaint does not allege that Howey-Fox breached any fiduciary duty owed to Robinson-Podoll. *See Grand State Prop., Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, 1996 S.D. 139, ¶ 16, 556 N.W.2d 84, 88; *Behrens v.*

*Wedmore*, 2005 S.D. 79, ¶ 52, 698 N.W.2d 555, 576.  Therefore, Robinson-Podoll's claims against Howey-Fox sound only in professional negligence.

[¶29.]       We next consider whether Robinson-Podoll waived her claim that the continuing tort doctrine applies.  Supported by our prior decisions under SDCL 15-2-14.2, Robinson-Podoll primarily argued the continuing representation doctrine tolled the three-year period to commence a legal malpractice action.  However, Robinson-Podoll also argued that "here there are intertwined instances of Attorney Howey-Fox committing malpractice.  It's undisputed that [Robinson-Podoll] never saw anybody else, never went to anybody else, fully trusted that Ms. Howey-Fox had her best interest in mind.  That would be the continuing tort theory[.]"

[¶30.]       While Robinson-Podoll did not fully develop the argument before the circuit court concerning Howey-Fox's professional duty to disclose her alleged error, she argued that Howey-Fox engaged in ongoing tortious conduct while representing Robinson-Podoll on the personal injury action and presented facts supporting the claim.  On appeal, this Court requested supplemental briefing from the parties on the potential civil liability arising from an attorney's breach of a professional duty to disclose an error to a client.  We also requested supplemental briefing on the application of the continuing tort doctrine under SDCL 15-2-14.2.  As a result, the record is sufficiently developed and the parties have had a full opportunity to argue these issues.  We conclude that the issue is properly before us.  *See State v. Gard,* 2007 S.D. 117, ¶ 15, 742 N.W.2d 257, 261 (stating that when both parties have "fully briefed and argued the issue at oral arguments" the Court may review an issue even when not properly preserved for appeal when the question "may arise

again and [is] one of public interest"); *United States v. South Dakota*, 665 F.2d 837, 842 (8th Cir. 1981) (holding that issues not brought before the circuit court are waived on appeal "save in exceptional cases where the obvious result 'would be a plain miscarriage of justice . . .'" (quoting *Hormel v. Helvering*, 312 U.S. 552, 558, 61 S. Ct. 719, 722)).[4]

[¶31.]      In considering Robinson-Podoll's claim that Howey-Fox breached a professional duty by failing to disclose the alleged malpractice during her continuous representation of Robinson-Podoll on the personal injury action, we initially turn to the South Dakota Rules of Professional Conduct (Rules).  Rule 1.4 requires an attorney to keep a client "reasonably informed about the status of a matter."[5]  The Rule does not directly address an attorney's responsibility to inform a client about errors or mistakes made by the lawyer during the representation.

---

4.     This case was argued to the circuit court without the benefit of this Court's application of *Pitt-Hart* to SDCL 15-2-14.2, and in reliance on multiple decisions applying tolling doctrines to SDCL 15-2-14.2 that we have today abandoned.

5.     Both parties discuss a recent opinion from the American Bar Association concerning an attorney's obligation under the Model Rules of Professional Conduct 1.4 to disclose an error made while representing a current client. (Am. Bar Ass'n, 2019); ABA Comm'n Ethics & Prof'l Responsibility, Formal Op. 481 (2018) (A Lawyer's Duty to Inform a Current or Former Client of the Lawyer's Material Error) (concluding "that a lawyer must inform a current client of a material error committed by the lawyer in the representation . . ." and "[a]n error is material if . . . (a) it is likely to harm or prejudice a client; or (b) of such a nature that it would reasonably cause a client to consider terminating the representation . . . "). We do not, however, view the ABA's opinion to be binding on this Court, nor does the opinion necessarily establish a tort duty or express a standard of care for liability purposes. *See also Behrens,* 2005 S.D. 79, ¶ 51, 698 N.W.2d at 575.

More importantly, the obligation to keep a client informed does not necessarily express a tort duty for which an attorney may be held liable.

[¶32.]    The Preamble to the Rules provides that a violation of the Rules "should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." *See also Behrens,* 2005 S.D. 79, ¶ 51, 698 N.W.2d 555, 575 (holding in a claim against a lawyer for breach of fiduciary duty, that not every violation of the Rules establishes liability for breach of fiduciary duty).

[¶33.]    Other courts have held that the Rules do not express a tort duty, but the Rules may be relevant in defining the standard of care by an attorney in a professional negligence case. *Leonard v. Dorsey & Whitney* LLP, 553 F.3d 609, 628-29 (8th Cir. 2009); *Universal Mfg. Co. v. Gardner, Carton & Douglas*, 207 F. Supp. 2d 830, 832-33 (N.D. Ill. 2002); *Ruden v. Jenk*, 543 N.W.2d 605, 611 (Iowa 1996); *Martinson Bros. v. Hjellum*, 359 N.W.2d 865, 875 (N.D. 1985); *Tucker v. Rogers*, 778 S.E.2d 795, 798 (Ga. Ct. App. 2015). These decisions are consistent with our Rules, which provide that "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct."

[¶34.]    While Rule 1.4 may suggest a standard of care requiring a lawyer to keep a client "reasonably" informed about an ongoing matter, the Rule provides little definitive guidance when a lawyer may have an obligation to disclose an error to the client. Lawyers, like all people, make mistakes. Many of these mistakes do not result in harm to the client and do not rise to the level that would impose tort

liability for failing to disclose the error. However, some errors are so significant so as to require the lawyer to inform the client of the error. In such instances, the failure to disclose the error to the client may give rise to a claim for professional negligence when that breach causes the client actual harm.[6]

[¶35.] To further develop when a professional duty of care to disclose an error arises, we consider other authorities. Both parties cite *Leonard* on the question of when a duty to disclose an error exists. 553 F.3d at 609. *Leonard* considered, under Minnesota law, whether a lawyer's failure to disclose a possible malpractice claim to a client can give rise to a tort claim against the lawyer. *Id.* The action in *Leonard* arose from a law firm's representation of an investment bank lending money on a large casino project. *Id.* at 614. Prior to closing, the law firm failed to obtain approval of certain loan documents by the National Indian Gaming Commission. *Id.* at 628. The borrower later defaulted, and the law firm also represented the client in the litigation. *Id.* at 616. After the investment bank failed to recover the full loan balance, the bank sued the law firm for breach of fiduciary duty for failing to disclose the alleged error to the bank during the litigation. *Id.* at 611.

---

6. Our decisions require that a client must have "sustained actual injury, loss or damage" as a result of the breach of duty in order to sustain a cause of action for professional negligence. *Haberer v. Rice*, 511 N.W.2d 279, 284 (S.D. 1994).

[¶36.]     In discussing a lawyer's duty to disclose an error, *Leonard* recognized that this duty may implicate both a fiduciary duty and the professional standard of care owed by an attorney to a client.[7]

> First, the client is entitled to know of any fact that may limit the lawyer's ability to comply with the fiduciary obligations. Second, the client is entitled to be informed of any acts or events over which it has control.  By definition, only the first aspect of this duty implicates the lawyer's fiduciary obligations to his client; the second arises from the lawyer's professional standards.

*Id.* at 629.

[¶37.]     *Leonard* also distinguished the facts before it from an instance where a lawyer must disclose an error.

> A classic example of a duty to advise a client of potential malpractice is a lawyer who fails to file a lawsuit for a client within the limitations period.  The Restatement classifies this duty as part of the duty to keep the client reasonably informed, but mentions "the resulting conflict of interest that *may require* the lawyer to withdraw."  "Disclosure should be made if the failure to do so could reasonably be expected to prejudice the client's continued representation."

*Id.* (citations omitted).

[¶38.]     In affirming summary judgment, *Leonard* concluded a fiduciary duty requiring disclosure exists only if "the potential claim creates a conflict of interest that would disqualify the lawyer from representing the client." *Id.* at 629.  *Leonard* explained that such a conflict exists when the lawyer knows "there is a non-

---

7.     *Leonard* was decided in the context of a claim for breach of fiduciary duty. We only consider a lawyer's duty to disclose as part of the standard of care necessary to support a claim for professional negligence against a lawyer. Since Robinson-Podoll has not pled a claim for breach of fiduciary duty, we do not address the circumstances in which a lawyer may have a fiduciary duty to disclose an error to a client.

frivolous malpractice claim against him such that there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by his own interest in avoiding malpractice liability." *Id.* The court reasoned that a conflict of interest did not exist during the collection litigation because the client had not suffered any actual damage from the alleged malpractice by the firm in failing to obtain approval of the loan documents. *Id.* at 630. The court concluded that the law firm's continued work on the case was "part of its legitimate efforts to prevent [the] possible error" from harming the client. *Id.* "A lawyer's duty to disclose his own errors must somehow be connected to a possibility that the client might be harmed by the error." *Id.*

[¶39.] Restatement (Third) of the Law Governing Lawyers § 20 cmt. c (2000) states that a duty to disclose an error arises "[i]f the lawyer's conduct of the matter gives the client a substantial malpractice claim against the lawyer." The Restatement then provides an example of "a lawyer who fails to file suit for a client within the limitations period must so inform the client, pointing out the possibility of a malpractice suit and the resulting conflict of interest that may require the lawyer to withdraw." *Id.* Another legal commentator discussing civil liability for a lawyer in failing to disclose an error argues that a duty to disclose arises when counsel "becomes aware of an act, error, or omission which could reasonably be expected to be the basis of a legal malpractice claim[.]" Cooper, *The Lawyer's Duty to Inform His Client of His Own Malpractice,* 61 Baylor L. Rev. 174, 198. *See also Tallon v. Comm. on Prof'l Standards, Third Jud. Dep't,* 86 A.D.2d 897, 898 (N.Y. App. Div. 1982) (holding in an attorney discipline case after the attorney failed to

inform the client of a missed statute of limitations that the "attorney has a professional duty to promptly notify his client of his failure to act and of the possible claim his client may thus have against him.")

[¶40.] When an act, error, or omission could reasonably be expected to be the basis of a legal malpractice claim against a lawyer, the lawyer's professional responsibility to keep a client "reasonably" informed is directly implicated. Imposing a legal duty to disclose such an act, error, or omission serves the purpose of ensuring that a client is able to make an informed decision about how best to proceed under such circumstances. As the court stated in *Leonard,* "The client is entitled to be informed of any acts or events *over which it has control." Id.* at 629 (emphasis added).

> Among the most critical decisions that the client has to make "regarding the representation" in that situation are (1) whether the client has a viable malpractice claim arising out of the representation, and, if so, whether to pursue it now or later and (2) whether to continue the current representation. The client can't make an informed decision regarding these issues without being informed about the potential claim. Indeed, in this situation, where the interests of the attorney and client may differ substantially, "a high degree of disclosure" is necessary. Certainly, the broad principles underlying Rule 1.4 support such a reading of the rule.

Cooper, 61 Baylor L. Rev. at 184 (citations omitted).

[¶41.] Considering the above authorities, we hold that a lawyer has a professional duty of care in South Dakota to notify a client of an act, error, or omission that is reasonably expected to be the basis of a malpractice claim.[8] In

---

8. While not having previously discussed a tort duty requiring disclosure of an act, error, or omission, we view this holding to be consistent with our longstanding requirement that an attorney has a duty to disclose significant

(continued . . .)

most instances, a duty to disclose will only arise when the client has already sustained actual injury, or the likelihood of injury is readily apparent. The parameters of this standard of care and whether it has been breached in a particular case will often involve questions of fact. *Hamilton*, 2014 S.D. 76, ¶ 22, 855 N.W.2d at 862. Further, "it is most often necessary to have an expert witness explain how the lawyer's actions fell below the standard of care." *Zhang*, 2019 S.D. 46, ¶ 28, 932 N.W.2d at 162.

[¶42.]       Here, Howey-Fox was informed within days that Ewalt had not been served in Yankton County, and that service was not made within three years from the date of the accident. Howey-Fox also admitted that she "immediately" notified her professional malpractice carrier of the potential malpractice claim against her.[9] The personal injury action against Ewalt was finally dismissed on April 5, 2013, for failure to timely commence the action. It is beyond debate, under the standard we

_____

(. . . continued)

defects which are unknown by the client. *Greene*, 1998 S.D. 16, ¶ 26, 575 N.W.2d at 462. This standard is also consistent with our prior application of the continuing representation doctrine, recognizing a dual purpose of "affording the attorney an opportunity to remedy an error," while also "preventing the attorney from defeating a client's cause of action by delay." *Schoenrock*, 419 N.W.2d at 199-200. Given the strictures of the legal malpractice statute of repose that we have defined today, imposing a legal duty on an attorney to disclose an act, error, or omission that could reasonably be expected to be the basis of a malpractice claim to a client in an ongoing matter. This rule ensures that a client is fully informed of the claim and can make an informed decision about how to proceed on the matter before the repose period expires.

9.       It is unclear whether the "immediate" notification of the carrier was when Howey-Fox first learned Ewalt had not been served in Yankton County, or if it was later during the ongoing representation on the personal injury action.

define today, that Howey-Fox had a duty to disclose the potential malpractice claim to Robinson-Podoll when the personal injury action against Ewalt was dismissed on April 5, 2013, and likely much before that time.[10]  Yet Howey-Fox testified,

> Q: Did you ever advise Miss Robinson that there was a potential legal malpractice claim stemming from the improper service?
>
> [Howey-Fox]:  Nope.  I told her she had a potential claim against the county for their failure to serve or, at the very least, failure to tell me when they knew she wasn't living in Yankton County to give those papers back, or at the least let me know so I could get her served.

[¶43.]     Having determined that a professional duty of care arose requiring Howey-Fox to disclose the error to Robinson-Podoll, we next consider whether the continuing tort doctrine delayed the occurrence of the malpractice under SDCL 15-2-14.2.  We have not previously addressed the applicability of the continuing tort doctrine to this statute because our prior decisions have relied exclusively on the doctrines of continuing representation and fraudulent nondisclosure to toll the statute.

[¶44.]     "Generally, when a tort involves a continuing injury, the cause of action accrues and the statute of limitations commences when the wrong terminates." *Alberts v. Giebink*, 299 N.W.2d 454, 456 (S.D. 1980).  In discussing the

---

10.  While there is no question that Howey-Fox had a duty to disclose the alleged malpractice claim to Robinson-Podoll by at least April 5, 2013, facts exist showing that this duty may have arisen when she learned Ewalt was not timely served.  When Howey-Fox had a duty to disclose the error, whether she breached the standard of care, and whether she engaged in ongoing tortious conduct in doing so, will ultimately need to be resolved on remand.  Similarly, fact questions also remain whether Howey-Fox initially breached the professional standard of care by failing to timely file the personal injury action.

operation of the continuing tort doctrine to the medical malpractice repose statute in SDCL 15-2-14.1, *Pitt-Hart* held that the repose period does not start until the last date of negligent treatment "because the repose period 'is measured . . . from the date of the last culpable act or omission of the defendant.'" 2016 S.D. 33, ¶ 26, 878 N.W.2d at 415 (quoting, *CTS Corp.*, 573 U.S. at 9, 134 S. Ct. at 2182); *see also, Schmiedt v. Loewen*, 2010 S.D. 76, ¶ 11, 789 N.W.2d 312, 315. "In the context of medical malpractice, this doctrine applies when harm is the cumulative effect of several treatments rather than the result of a single act." *Pitt-Hart,* 2016 S.D. 33, ¶ 25, 878 N.W.2d at 415. *Pitt-Hart* held the occurrence of a medical malpractice claim under SDCL 15-2-14.1 will be delayed under the continuing tort doctrine if the plaintiff shows: "(1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong." 2016 S.D. 33, ¶ 26, 878 N.W.2d at 415.

[¶45.]	Here, Robinson-Podoll initially sustained damage from a single act of alleged negligence when Howey-Fox failed to timely commence the personal injury action against Ewalt. Any wrongful conduct by Howey-Fox thereafter in failing to disclose the error was not the cause of that initial injury. Thus, the continuing tort doctrine did not delay the occurrence of the three-year repose period on the malpractice claim for failing to timely file the personal injury action.

[¶46.]	Nevertheless, questions of fact exist as to whether Howey-Fox's alleged ongoing tortious conduct in failing to disclose this malpractice supports a separate claim for legal malpractice, that occurred less than three years before Robinson-Podoll commenced this action in January of 2016. Viewing the facts most favorably

to Robinson-Podoll shows that Howey-Fox's duty to disclose and alleged breach of that duty occurred after Howey-Fox allegedly failed to timely commence the personal injury action in 2010. Facts also exist showing that Howey-Fox's failure to disclose this alleged error during the representation, that continued through 2015, resulted in (1) "a continuous and unbroken course of negligent" representation, and (2) the representation "was so related as to constitute one continuing wrong." *See Pitt-Hart*, 2016 S.D. 33, ¶ 26, 878 N.W.2d at 415. Finally, Robinson-Podoll's alleged damage (the expiration of the repose period for the original claim of malpractice) arose from "the cumulative effect of [the alleged continuing wrong] rather than the result of a single act." *Id.* ¶ 25.

[¶47.] Although this separate claim of legal malpractice adds another layer of proof for Robinson-Podoll to prevail, this burden is not insurmountable. In a different setting, we recently discussed a claim for legal malpractice by a dissatisfied client against his divorce lawyer. *Zhang*, 2019 S.D. 46, 932 N.W.2d 153. The client hired counsel to represent him on the legal malpractice action against his divorce lawyer. He then filed an action claiming the malpractice lawyers were also negligent in representing him on the legal malpractice claim. *Id.* ¶ 7, 932 N.W.2d at 158. In affirming summary judgment on his claim against the malpractice lawyers, we described the proof required under such circumstances to be "fairly described as a case, within a case, within a case[,]" requiring adequate proof on each claim. *Id.* ¶ 32, 932 N.W.2d at 163. Similarly, Robinson-Podoll will be required to show that she had a viable claim for damages in the personal injury action, a viable claim for legal malpractice against Howey-Fox involving the missed personal injury

statute of limitations, and a viable claim for legal malpractice against Howey-Fox in failing to disclose the initial claim of malpractice to Robinson-Podoll during the ongoing representation.

[¶48.] Finally, as to the ring, we conclude that Robinson-Podoll sufficiently alleged ongoing acts or omissions that support a claim for continuing tortious conduct. Robinson-Podoll claims that Howey-Fox took the ring as collateral in 2012 and held it throughout the representation. Questions of fact exist on this record as to whether Howey-Fox breached professional duties owed to Robinson-Podoll by taking the ring and continuing to hold the ring without returning it to Robinson-Podoll.[11] These questions require that we also remand this claim to determine the date of the occurrence under the continuing tort doctrine. *See Pitt-Hart*, 2016 S.D. 33, ¶ 26, 878 N.W.2d at 415.

[¶49.] We affirm the circuit court's decision granting Howey-Fox's motion to amend her answer. We reverse the entry of summary judgment on Robinson-Podoll's claims for malpractice and remand for further proceedings consistent with this opinion.

[¶50.] GILBERTSON, Chief Justice, and KERN and SALTER, Justices, and KONENKAMP, Retired Justice, concur.

---

11. Rule of Professional Responsibility 1.8 prohibits a lawyer from knowingly acquiring "an ownership, possessory security or other pecuniary interest adverse to the client unless:" the attorney satisfies three stated requirements, including a written disclosure by the attorney for the client to seek independent legal advice and a written and signed informed consent by the client. We discussed in *Behrens*, 2005 S.D. 79, ¶ 51, 698 N.W.2d at 576, that Rule 1.8, regarding conflict of interests, may support a separate tort duty.