#26198-a-PER CURIAM

**2012 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KATHY L. WEBB,                                    Plaintiff and Appellee,

    v.

ANTHONY E. WEBB,                                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

ANTHONY E. WEBB
Pierre, South Dakota                              Pro Se Appellant.

BRIAN L. UTZMAN
Smoot & Utzman, P.C.
Rapid City, South Dakota                          Attorneys for Appellee.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 17, 2012

OPINION FILED  **05/23/12**

#26198

PER CURIAM

[¶1.] Anthony Webb (Anthony) appeals an order reducing child support arrearages to a written judgment in favor of his ex-wife, Kathy Webb (Kathy). The Butte County Circuit Court awarded Kathy a judgment of $71,805.19. Anthony argues that he paid the child support as it came due and that the passage of time should prevent Kathy from recovering.

## FACTS AND PROCEDURAL HISTORY

[¶2.] Anthony and Kathy married in 1981 in California. One child was born to the marriage. The Butte County Circuit Court entered a Judgment and Decree of Divorce in 1985. That order required Anthony to pay $250 per month in child support. Initially, the child support was collected through the Department of Social Services – Office of Child Support Enforcement. When that office received payments from Anthony, it would first apply the money toward any amount Kathy received through the State's TANF (Temporary Assistance to Needy Families) program. Before 1991, Anthony paid the entirety of an accumulated TANF arrearage. In 1991, Kathy requested that the Office of Child Support Enforcement no longer enforce Anthony's obligation. DSS sent Anthony a letter to this effect. This letter indicated that, in accord with the divorce decree, Anthony was still required to make all payments through the Butte County Clerk of Courts. The Butte County Clerk of Courts' records indicate that Anthony made three $150 payments in 1991, then no further payments. As of the 18th birthday of the parties' child, Anthony's child support arrearages were $36,917.56, as calculated by DSS.

[¶3.] The circuit court conducted a hearing on Kathy's motion to reduce Anthony's child support arrearage to a money judgment on July 6, 2011. At the

hearing, Kathy called a DSS worker and the Butte County Clerk of Courts. These witnesses testified regarding their offices' records of child support paid by Anthony. Kathy also testified at the hearing. She testified that she received only a small amount of child support from Anthony since 1991. Anthony, who acted pro se and appeared telephonically, did not testify. He claimed that he did not want to testify because he had not been subpoenaed.

[¶4.]	The circuit court found that Anthony had not paid his child support obligation in the amount of $36,917.56. When pre-judgment interest was added, the total amount of the judgment came to over $71,000.

## ANALYSIS AND DECISION

[¶5.]	As his first issue, Anthony asserts that the circuit court improperly shifted the burden to Anthony to prove that he did not owe child support. Kathy brought her claim to reduce back child-support under SDCL 25-7-7.4. This section states:

> Any payment or installment of support under an order for support, as defined by § 25-7A-1, whether entered by a court or an administrative entity of this state or of any other state or jurisdiction, which is unpaid after the date it is due, is a judgment by operation of law, with the full force, effect and attributes of a judgment of this state, including enforceability, and is entitled, as a judgment, to full faith and credit in this state.

Kathy submitted evidence establishing the existence of the child support order – the judgment of divorce. She also presented evidence that the obligation was not fulfilled.

[¶6.]	The judgment of divorce required that all payments were to be made through the Butte County Clerk of Courts. Kathy called the clerk to provide

testimony authenticating a document maintained by the clerk's office showing that, although Anthony had made some payments through that office, no payments were made after 1991. Further, Kathy testified that she had not received the payments when due. In short, Kathy provided sufficient evidence establishing the existence of the obligation and that the obligation had gone unpaid.

[¶7.] Throughout his brief, Anthony maintains that he made the payments when due directly to Kathy. But Anthony's testimony in this regard is not in the record. When given the opportunity to testify at the hearing, Anthony refused. The circuit court very clearly explained that Anthony was a party, and therefore didn't need to be under subpoena to testify on his own behalf. But Anthony still chose not to testify. His assertion that he paid Kathy directly is not supported by any of the evidence received at the hearing. The circuit court did not improperly shift the burden to Anthony. The evidence Kathy submitted established the obligation and established the amount of the obligation that had not been paid when due.

[¶8.] Anthony next argues that Kathy's bankruptcy filing in 1992 should prevent her from reducing the unpaid child support obligation to a judgment because Kathy did not list the child support obligation as an asset. Anthony argues that the doctrine of judicial estoppel should apply to prevent Kathy from now claiming the unpaid obligation as an asset.

> Judicial estoppel cannot be reduced to an equation, but courts will generally consider the following elements in deciding whether to apply the doctrine: the later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 2005 S.D. 82, ¶ 34, 700 N.W.2d 729, 737-38 (citations omitted).  Here, the "later position" is the claim of an unpaid support obligation.  The earlier position would be the bankruptcy, where Kathy did not claim the unpaid obligation as an asset.  But the present facts do not fit the elements of judicial estoppel.  Even assuming that the two positions are inconsistent, Anthony will not suffer an unfair detriment should Kathy's claim of unpaid support be allowed.  Any detriment suffered by Anthony is the result of his failure to pay the required support obligation rather than an unfair detriment imposed due to Kathy's previous inconsistent position.

[¶9.]     Anthony argues that Kathy's omission of the unpaid obligation as an asset in the bankruptcy negatively impacts her credibility.  The circuit court observed Kathy testify and was aware of Anthony's position that she should have included the asset in the bankruptcy.  Given the decision in this matter, the circuit court obviously found Kathy's testimony credible.  "The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the [trial] court, and we give due regard to the [trial] court's opportunity to observe the witnesses and the evidence."  *Stockwell v. Stockwell,* 2010 S.D. 79, ¶ 24, 790 N.W.2d 52, 61 (internal quotation marks omitted).

[¶10.]     Anthony next asserts that Kathy's delay in bringing this action subjects her claim to the doctrine of laches.  "We review de novo a court's ruling on the applicability of the doctrine of laches."  *Wehrkamp v. Wehrkamp*, 2009 S.D. 84, ¶ 11, 773 N.W.2d 212, 216.

> To prove laches, [Anthony] must show that: (1) [Kathy] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable

> delay before commencing the suit, and (3) that allowing her to maintain the action would prejudice [Anthony].

*Culhane v. Michels*, 2000 S.D. 101, ¶ 15, 615 N.W.2d 580, 585 (quotations omitted). Anthony presented no evidence regarding any potential prejudice he suffered as a result of Kathy's delay. "Prejudice will not be inferred from the mere passage of time." *Id.* (citation omitted). Anthony cannot establish prejudice as required to satisfy the doctrine of laches. Therefore, Anthony cannot establish the elements necessary to prove laches.

[¶11.] Furthermore, this is an action to reduce unpaid child support obligations to a money judgment. The circuit court enforced the 20-year statute of limitations in this action, barring any recovery for amounts due more than 20 years before Kathy commenced this action. SDCL 15-2-6(1). By statute, child support obligations become a judgment when they are due but not paid. SDCL 25-7-7.4. As in *Culhane*, the doctrine of laches does not apply to the delay in seeking to reduce Kathy's support obligation.* "Logically, enforcing a valid judgment would rarely invoke the application of laches." *Culhane,* 2000 S.D. 101, ¶ 15, 615 N.W.2d at 586.

[¶12.] Finally, Anthony argues that the circuit court improperly denied his motion for a new trial. After the circuit court entered its memorandum decision, Anthony moved for a new trial. Anthony claimed a new trial was appropriate under SDCL 15-6-59(a)(1) and (6), which provide:

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: (1) Irregularity in the proceedings of the court, jury, or adverse

---

\* The support obligation at issue in *Culhane* was alimony, but this Court discussed the similarities between alimony and child support in that case. "At the time SDCL 25–7–7.3 and 7.4 were enacted, the Legislature evidently intended the statutes to cover both child support and alimony." *Id.* ¶ 13.

> party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; . . . [or] (6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law[.]

The circuit court denied Anthony's motion for a new trial. This Court reviews a circuit court's denial of a motion for a new trial for an abuse of discretion. *Harmon v. Washburn*, 2008 S.D. 42, ¶ 10, 751 N.W.2d 297, 300.

[¶13.] Anthony claims his pro se status prevented him from presenting evidence. This is the claimed "irregularity in the proceedings" of which Anthony complains. "The expression 'irregularity in the proceedings' . . . relates generally to departures by the court, during the trial of a case, from the due and orderly method of disposition of a case." *Fechner v. Case*, 2003 S.D. 37, ¶ 12, 660 N.W.2d 631, 635 (internal quotation marks and citations omitted).

[¶14.] Throughout these proceedings, the circuit court gave Anthony as much latitude as possible due to his pro se status. The circuit court also told Anthony that his pro se status would not be held against him, but that proceeding pro se could not be used as an excuse for ignorance of court rules. At the hearing, the circuit court very carefully advised Anthony that in order for his side of the story to be considered, he would need to testify on his own behalf. But Anthony refused. Now Anthony claims he should be given a new trial because the circuit court did not consider Anthony's version of the facts. Essentially, Anthony asks for a second bite at the apple due to his failure to understand the applicable procedure. An unrepresented party "can claim no advantage from his [pro se] status." *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 27, 776 N.W.2d 58, 65 (citation omitted). Anthony's status as a pro se litigant does not entitle him to a new trial.

[¶15.]     In support of his motion for a new trial regarding insufficiency of the evidence, Anthony again asserts that Kathy did not provide sufficient evidence to prove the unpaid support obligation. But as set forth above, Kathy established the obligation and provided evidence that the obligation had not been satisfied. Anthony also argues that, if given the chance, he would present evidence that would establish that he paid his obligation directly to Kathy. As discussed above, Anthony had every opportunity to present his evidence, but chose not to do so. The circuit court did not abuse its discretion in denying Anthony's motion for a new trial on either statutory ground argued by Anthony.

## CONCLUSION

[¶16.]     Despite several opportunities to do so, Anthony presented no testimony at trial. For that reason, the uncontroverted evidence before the circuit court established the existence and amount of the unpaid child support obligation. The circuit court did not err by refusing to apply the doctrine of judicial estoppel or laches to Kathy's claim, nor did it abuse its discretion in denying Anthony's motion for new trial. The judgment is affirmed.

[¶17.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, participating.