#30305-a-MES
**2024 S.D. 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

CODY JAMES HEER,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON SOGN
Judge

\* \* \* \*

MARK KADI of
Minnehaha County Office of
   the Public Advocate
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 19, 2024
OPINION FILED **09/04/24**

SALTER, Justice

[¶1.]		Cody Heer appeals from multiple drug-related convictions.  Prior to trial, Heer moved to represent himself.  The circuit court granted Heer's motion but ordered his former court-appointed attorney to serve as standby counsel.  Heer now claims his Sixth Amendment right to self-representation was violated by the appointment of standby counsel and by standby counsel's presence at trial.  Heer also claims certain statements made by the prosecutor during closing argument amounted to improper vouching, and although Heer failed to object, he claims the alleged vouching was plain error.  We affirm.

### Factual and Procedural Background

[¶2.]		On July 7, 2022, Cody Heer sold approximately one ounce of methamphetamine to a confidential informant.  Heer's child was present during the sale, which occurred at a Walmart parking lot in Sioux Falls.

[¶3.]		A Minnehaha County grand jury returned a three-count indictment charging Heer with distributing a controlled substance, possession of a controlled substance, and causing a child to be present where methamphetamine is distributed.  The State also filed a part II habitual offender information alleging Heer was previously convicted of five felonies.

[¶4.]		Heer was initially represented by court-appointed attorney, Lyndee Kamrath.  At a pre-trial motions hearing, Heer orally moved to represent himself after the circuit court denied Heer's request to appoint substitute counsel.[1]  After

---

1.		After Kamrath indicated her willingness to continue to zealously represent Heer, the circuit court concluded Heer had not established good cause to

(continued . . .)

explaining the consequences and disadvantages of self-representation and establishing that Heer was knowingly and voluntarily waiving his right to court-appointed counsel, the circuit court granted Heer's motion. *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975); *see also State v. Van Sickle*, 411 N.W.2d 665, 666 (S.D. 1987) (applying *Faretta* in determining whether defendant's right to counsel was voluntarily and knowingly waived).[2]

[¶5.] The circuit court discharged Kamrath as Heer's attorney of record but ordered that she remain as standby counsel, which the court explained to Heer in the following terms:

> Standby counsel means that she's going to keep up to date on the file. She will be available to consult if that is what you decide to do. She does not represent you. She won't be telling you what to do or how to do things, but if you change your mind about being represented or if you have specific questions, you can ask Ms. Kamrath about that; but again, she's not your attorney, and she won't be making efforts to defend you in this case except to the extent asked. Do you understand that?

---

(. . . continued)

justify a change in court-appointed counsel, citing *State v. Talarico*, 2003 S.D. 41, 661 N.W.2d 11 and *State v. Fender*, 484 N.W.2d 307 (S.D. 1992). The court further concluded that such an appointment would disrupt the judicial process. Heer does not challenge the court's denial of his request for substitute counsel on appeal.

2. The United States Supreme Court in *Faretta v. California* explained, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 242, 87 L. Ed. 268 (1942)).

Heer voiced his understanding and expressed no objection.

[¶6.]     Prior to commencement of the trial on February 7, 2023, the circuit court confirmed Heer still wished to proceed pro se and also asked Heer how to explain Kamrath's presence to the jury:

> The court:     But let's talk about how this is going to work. So Ms. Kamrath right now is sitting at the same table as you, but how would you like to have it handled when we have the jury in here? In other words, during jury selection I would introduce the people at your table and I can explain that you're representing yourself, but you also have an attorney with you that doesn't represent you in this matter, but is available to answer some of your questions. So I can explain that or we can have Ms. Kamrath sit in the gallery and during breaks you can consult with her. It really doesn't matter to me how you want to handle that, but I ask you.
>
> Heer:     This is fine, your honor, if that's all right.
>
> The court:     Is it ok if I introduce her to the jury and say you're representing yourself, but Ms. Kamrath is an attorney that's available to answer questions for you?
>
> Heer:     Yes, your honor.

[¶7.]     During voir dire, Heer, Kamrath, the court, and the attorney for the State each introduced themselves. The court also introduced the clerk, court reporter, and bailiffs. Kamrath did not participate in the trial. Heer made an opening statement and cross-examined the State's witnesses. He made one motion for a mistrial and a motion for judgment of acquittal after the State rested. Heer settled jury instructions and gave a closing argument. He never objected or suggested that Kamrath's presence was interfering with his right to represent himself, and the court later remarked, "[h]e did a nice job representing himself[.]"

[¶8.] During the State's closing argument, the prosecutor made several statements that Heer did not object to, though he now claims they constituted impermissible vouching. These are largely first-person statements made by the prosecutor about the evidence, including the statement, "I think you can look at this and believe that it was proven by both direct and indirect evidence combined."

[¶9.] The jury found Heer guilty on all counts. The circuit court later granted his request to have Kamrath reappointed for the part II information proceeding at which Heer admitted that he had been convicted of the five felonies listed in the part II information. For the distribution conviction, the court sentenced him to fifteen years in prison, with five years suspended. The court did not impose a sentence on the unauthorized possession charge and suspended a 180-day jail sentence on the conviction of causing a child to be present where methamphetamine was distributed.

[¶10.] With the assistance of different appointed counsel, Heer appeals. He contends his Sixth Amendment right to self-representation was violated by the circuit court's appointment of standby counsel and by the extent of standby counsel's involvement in the case. Heer also argues that the State's comments during closing argument amount to plain error.

## Analysis and Decision

### *The appointment of standby counsel*

[¶11.] Ordinarily, "[a]ppeals asserting an infringement of a constitutional right are reviewed de novo." *State v. Hirning*, 2011 S.D. 59, ¶ 13, 804 N.W.2d 422, 426 (citing *State v. Asmussen*, 2006 S.D. 37, ¶ 11, 713 N.W.2d 580, 586). But where,

as here, the defendant did not object, the error has not been preserved, and we review the claim under the plain error doctrine. *See State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729 (applying plain error standard to defendant's forfeited double jeopardy argument).

[¶12.] "To establish plain error, an appellant must show '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *State v. Bausch*, 2017 S.D. 1, ¶ 27, 889 N.W.2d 404, 412). "Additionally, 'with plain error analysis, the defendant bears the burden of showing the error was prejudicial.'" *Id.* (citations omitted).

[¶13.] The Sixth Amendment guarantees a defendant the right to *assistance* of counsel. It is a personal right that carries with it the corresponding right to decline assistance through a volitional act of free will, even at the risk of potential adverse consequences from self-representation. *See Faretta*, 422 U.S. at 833–34, 95 S. Ct. at 2540–41.[3] A state may not, therefore, compel a defendant to accept the assistance of appointed counsel. *See id.*

[¶14.] However, "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *McKaskle v. Wiggins*, 465 U.S. 168,

---

3. Article VI, § 7 of the South Dakota Constitution provides an accused with "the right to defend in person and by counsel" which we have interpreted as a separate right of self-representation. *State v. Thomlinson*, 78 S.D. 235, 237, 100 N.W.2d 121, 122 (1960); *State v. Hauge*, 2019 S.D. 45, ¶ 11, 932 N.W.2d 165, 169–70.

176, 104 S. Ct. 944, 949–50, 79 L. Ed. 2d 122 (1984) (citing *Faretta*, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46; *United States v. Dougherty*, 473 F.2d 1113, 1124–26 (D.C. Ct. App. 1972)). In *Wiggins*, the United States Supreme Court reconciled appointment of standby counsel with a defendant's right to self-representation:

> [B]oth *Faretta's* logic and its citation of the *Dougherty* case indicate that no absolute bar on standby counsel's unsolicited participation is appropriate or was intended. The right to appear pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense. Both of these objectives can be achieved without categorically silencing standby counsel.

*Id.*

[¶15.] Simply put, there is no error here. The circuit court's appointment of Kamrath as standby counsel was permissible and proper. There is no merit to Heer's claim that the appointment of standby counsel, alone, violated his constitutional right to represent himself.

**Standby counsel's presence at trial**

[¶16.] Heer's related claim that Kamrath's presence at trial was too conspicuous is also unpreserved and subject to plain error review.[4] And, like the appointment of standby counsel issue, we are unable to detect any error.

---

4. Because Heer affirmatively assented to Kamrath's introduction to the jury and her presence at counsel table, a colorable argument exists that Heer actually waived—not merely forfeited—his argument about the extent of Kamrath's involvement at trial. *See United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993) (defining waiver as the "intentional relinquishment or abandonment of a known right"); *see also United States v. Booker*, 576 F.3d 506, 511 (8th Cir. 2009) (holding waiver where the "defense approved the procedure which appellant now attacks"). The State's waiver argument is based on Heer's failure to object—not waiver

(continued . . .)

[¶17.]      In *State v. Banks*, 387 N.W.2d 19 (S.D. 1986), we explained that pro se defendants are allowed to maintain actual control over the case that is presented to the jury.  387 N.W.2d at 25–26; *see also Wiggins*, 465 U.S. at 177, 104 S. Ct. at 950 ("In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way.").  "Additionally, once a defendant has expressed his wish to appear pro se, participation of counsel must be limited so as not to destroy the jury's perception that the defendant is representing himself." *Id.*

[¶18.]      Thus, the limitations on standby counsel's participation in trial are twofold: "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." *Wiggins*, 465 U.S. at 178, 104 S. Ct. at 951. "If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded." *Id.*

[¶19.]      "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.  The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear pro se exists to affirm the accused's individual dignity and autonomy." *Id.*

---

(. . . continued)
in the true sense—and, under the circumstances, we decline to consider the waiver issue further.

[¶20.] Here, Kamrath did not exceed the limitations of permissible conduct for standby counsel. It is true that she was seated at counsel table next to Heer throughout the trial, but this was at Heer's election. The circuit court specifically gave Heer the choice of having Kamrath sit in the gallery or sit at counsel table. Heer chose the latter. Heer cannot be heard to complain about a choice he made. *See Taylor Realty Co. v. Haberling*, 365 N.W.2d 870, 874 (S.D. 1985) ("Plaintiff cannot be heard to complain of matters to which he acquiesced."). Further, the jury was informed that Heer was representing himself and that Kamrath did not represent Heer but was available to him to answer questions. This was sufficient to dispel any notion that Heer was represented by Kamrath. *See State v. Ralios*, 2010 S.D. 43, ¶ 47, 783 N.W.2d 647, 660 (noting the general rule that presumes juries follow a trial court's instructions) (citing cases).

[¶21.] Heer also points to Kamrath's introduction to the jury. Again, however, the circuit court asked Heer if he was agreeable to Kamrath being introduced to the jury, and he voiced no concern or objection. Nor did he object during the time of her introduction. Again, Heer cannot complain about matters to which he acquiesced. *See Taylor*, 365 N.W.2d at 874.

[¶22.] In any event, Kamrath's presence at counsel table and introduction do not amount to participation. In fact, Heer—and Heer alone—participated in his defense at trial. Heer made pretrial motions, he selected his jury, he gave an opening statement, he cross-examined witnesses, and he gave a closing argument. Other than asking to approach the bench, which Heer does not mention, Kamrath did not play a role in the trial at all. Kamrath did not "make or substantially

interfere with any significant tactical decisions," nor did she "control the questioning of witnesses," nor "speak instead of the defendant on any matter of importance." *Wiggins*, 465 U.S. at 178, 104 S. Ct. at 951. At all times, actual control of the trial remained with Heer. Kamrath's mere presence at counsel table and introduction could not have "destroy[ed] the jury's perception that the defendant [was] representing himself." *Id.* There is no merit to Heer's claim that his right to self-representation was denied.[5]

### Vouching

[¶23.]	Heer acknowledges he did not object to certain statements during the State's closing argument that he alleges constituted improper vouching. However, he claims the circuit court committed plain error by not intervening sua sponte.

[¶24.]	In our view, there was no error, and Heer is unable to establish the first prong of our plain error standard. "Improper vouching 'invite[s] the jury to rely on the government's assessment that the witness is testifying truthfully.'" *State v. Snodgrass*, 2020 S.D. 66, ¶ 45, 951 N.W.2d 792, 806 (quoting *State v. Goodroad*, 455 N.W.2d 591, 594 (S.D. 1990)). Thus, the "State may not improperly vouch for a witness's credibility by 'tell[ing] the jury that [it] has confirmed a witness's credibility before using [the witness].'" *Id.* (quoting *Goodroad*, 455 N.W.2d at 594) (alterations in original). "It is 'the exclusive province of the jury to determine the

---

5.	We agree, as Heer notes, that structural errors such as the denial of the right to self-representation do not require a showing of prejudice. *See State v. Arguello*, 2015 S.D. 103, ¶ 5, 873 N.W.2d 490, 493 ("Structural error requires reversal without a showing of prejudice."). However, we conclude there was no deprivation of the right of self-representation at trial, and thus, no structural error. *See id.* ¶ 7 ("Because the error in this case does not fit the categorical framework, we conclude that no structural error occurred.").

credibility of a witness.'" *Id.* (quoting *State v. McKinney*, 2005 S.D. 73, ¶ 32, 699 N.W.2d 471, 481).

[¶25.]　　　　Nor can a prosecutor "plac[e] the prestige of the government behind the witness and imply[ ] that the prosecutor knows what the truth is and thereby assure[ ] its revelation." *State v. Nelson*, 2022 S.D. 12, ¶ 38, 970 N.W.2d 814, 826 (quoting *State v. Westerfield*, 1997 S.D. 100, ¶ 12, 567 N.W.2d 863, 867). "If a prosecutor conveys this message explicitly or implicitly, they are improperly vouching." *Id.* (citing *Jenner v. Leapley*, 521 N.W.2d 422, 427 (S.D. 1994)).

[¶26.]　　　　Heer identifies the following statements by the prosecutor as improper vouching:

- "I think circumstantially there is no other basis for where that methamphetamine comes from, except from this defendant."

- "I think you can also look at this and believe that it was proven both by direct and circumstantial evidence combined."

- "I don't think there is any doubt . . . so I don't believe there is any issue who sold this. I think it is this defendant."

- "I think if you look at the evidence I don't believe there is any issue."

[¶27.]　　　　None of these statements relate to any witness testimony, nor do they explicitly or implicitly attempt to convey that the State has confirmed the veracity of any witnesses' testimony. In context, they are "fair characterizations of uncontroverted evidence, rather than improper expressions of the prosecutor's personal opinion of [a witness's] credibility." *United States v. Jones*, 865 F.2d 188, 191 (8th Cir. 1989). Though these statements were made from a first-person point

of view, they do not suggest "that the government has special knowledge of evidence not presented to the jury" or carry "an implied guarantee of truthfulness, or express[] a personal opinion about credibility." *United States v. Bentley*, 561 F.3d 803, 812 (8th Cir. 2009).

[¶28.]    As the Court in *State v. Luster*, 902 A.2d 636, 654 (Conn. 2006), explained:

> Although prosecutors generally should try to avoid using phrases that begin with the pronoun "I" such as "I think" or "I believe," we recognize that the use of the word "I" is part of our everyday parlance and . . . because of established speech patterns, it cannot always easily be eliminated completely from extemporaneous elocution. Furthermore, "[t]he state's attorney should not be put in the rhetorical straightjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows." Therefore, if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute misconduct.

(cleaned up).[6]

[¶29.]    Even if the State engaged in vouching, any error was not plain. An error is "plain" when it is clear or obvious. *See McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d at 729–30. The "requirement that an error be 'plain' means that lower court decisions that are questionable but not *plainly* wrong (at time of trial or at

---

6.    The trial court is in the best position to regulate closing arguments and to determine whether the prosecutor has crossed the line into improper vouching. *See Woolford v. State*, 2023 WL 7272067, at *4 (Md. Ct. App. Nov. 3, 2023) (in determining whether prosecutor engaged in improper vouching, the court noted the trial court's "broad discretion to regulate closing argument" and that "[g]enerally, the trial court is in the best position to determine whether counsel has stepped outside the bounds of propriety during closing argument." (citations omitted)).

time of appeal) fall outside the Rule's scope." *Id.* ¶ 23, 931 N.W.2d at 732 (citations omitted). Heer has not provided us with any authorities showing that the State's comments during closing argument were "plainly wrong."

[¶30.] Finally, even if the State's comments constituted plain error, Heer has not sustained his burden of demonstrating prejudice. "'Prejudice' in the context of plain error requires a showing of a 'reasonable probability' that, but for the error, the result of the proceeding would have been different." *State v. Townsend*, 2021 S.D. 29, ¶ 31, 959 N.W.2d 605, 614 (quoting *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 33, 785 N.W.2d 272, 283). However, Heer does not claim or provide any support to indicate that the comments affected the jury's verdict or that the result of the trial would have been different. We conclude the result of Heer's trial was unaffected by the State's comments.

[¶31.] Heer seems to view prejudice more generically and less as an outcome-determinative standard, arguing that he was prejudiced by the very fact that the circuit court did not intervene on his behalf. In addition to relying upon an incorrect understanding of prejudice, this claim is unsustainable because it disregards the neutral role of the court, which generally prevents judges from acting on behalf of a party, even one who is representing himself. We have explained that "parties who appear pro se may not capitalize on their unfamiliarity with the law; they are bound by the same rules of evidence and procedure that bind attorneys and a trial judge is not required to act as counsel for a litigant." *Oesterling v. Oesterling*, 354 N.W.2d 735, 737 (S.D. 1984). For the reasons we have described above, the

court was under no duty to intervene on Heer's behalf during the State's closing argument.

[¶32.] Heer chose to proceed pro se and did so after specifically being informed by the circuit court that he would be required to "adhere to various technical rules" and that "the judge can't give you legal advice on how to proceed, and you're going to have to comply with certain rules of the court just like an attorney would need to comply." The circuit court specifically referenced the need to make objections. Heer voiced his understanding, declined the opportunity to visit with standby counsel, and indicated he had no questions. "An unrepresented party 'can claim no advantage from his [pro se] status.'" *Webb v. Webb*, 2012 S.D. 41, ¶ 14, 814 N.W.2d 818, 823; *see also Zhang v. Rasmus*, 2019 S.D. 46, ¶ 37, 932 N.W.2d 153, 164 ("[S]elf-represented litigants are otherwise held to the same standard as attorneys, including the obligations to comply with rules of procedure and evidence . . . [and] can claim no advantage from his pro se status.").

[¶33.] Affirmed.

[¶34.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.